UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| RICHARD W. KAY and ) <br> DEANA D. KAY, husband and wife, ) <br> ) <br>     Plaintiffs, ) <br> ) <br>  vs. ) <br> ) <br> LAMAR ADVERTISING OF SOUTH ) <br> DAKOTA, INC., a South Dakota ) <br> corporation, and ) <br> CODY P. BURTON, ) <br> ) <br>     Defendants/ ) <br>     Counter-claimants, ) <br> ) <br>  vs. ) <br> ) <br> RICHARD W. KAY, ) <br> ) <br>     Counter-defendant. ) | CIV. 07-5091-KES <br><br><br><br><br><br><br> ORDER DENYING <br> DEFENDANTS' MOTION IN <br> LIMINE TO LIMIT TESTIMONY <br> OF DR. WALTER LIERMAN |

Defendants, Lamar Advertising of South Dakota and Cody Burton, move in limine to limit the testimony of plaintiffs' expert witness, Dr. Walter Lierman. Plaintiffs, Richard Kay and Deana Kay, oppose the motion. For the reasons stated below, defendants' motion is denied.

**BACKGROUND**

The relevant background for purposes of addressing defendants' motion in limine to limit plaintiffs' expert witness is as follows: On July 19, 2006, plaintiffs, Richard and Deana Kay, were involved in a motorcycle accident at an intersection near Sturgis, South Dakota. Plaintiffs were riding a motorcycle that was driven by Richard Kay (Kay). The motorcycle collided with a boom truck owned by defendant, Lamar Advertising, and driven by Cody Burton, an employee of Lamar Advertising.

Plaintiffs brought suit against defendants claiming defendants' truck was negligently operated in such a manner that caused plaintiffs' injuries. Defendants deny any negligence on their behalf and assert several affirmative defenses and a counterclaim against plaintiff Richard Kay on the basis that Kay operated the motorcycle in a negligent manner.

Plaintiffs identified Dr. Lierman in their Fed. R. Civ. P. 26(a)(2) disclosure statement. Dr. Lierman submitted his report and analyses. He was later deposed by defendants' attorney.

Defendants move in limine under Rule 702 to exclude Dr. Lierman's testimony that would express an opinion related to Kay's future economic damages in the form of future loss of earnings.[1] Plaintiffs resist this motion.

---

[1] Defendants' motion in limine only addresses Dr. Lierman's conclusions about Kay's future economic damages. The court will therefore not address Dr. Lierman's conclusions about past economic damages.

**DISCUSSION**

**A.      Standard for Admissibility of Expert Testimony**

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence.[2]  District courts have discretion in determining whether to admit expert witness testimony under Rule 702.  See In re Air Crash at Little Rock Arkansas, on June 1, 1999, 291 F.3d 503, 509 (8th Cir. 2002).  The proponent of expert testimony must prove its admissibility by a preponderance of the evidence.  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592 n.10, 113 S. Ct. 2786, 2796, 125 L. Ed. 2d 469 (1993).

Under Rule 702, the trial judge acts as a "gatekeeper" screening evidence for relevance and reliability.  Id. at 589, 113 S. Ct. at 2795.  "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony.  The rule clearly is one of admissibility rather than exclusion."  Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001) (internal quotations and citations omitted).  "The exclusion of an expert's

---

[2]Rule 702 was amended in 2000 to read as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

opinion is proper only if it is so fundamentally unsupported that it can offer no assistance to the jury." Wood v. Minn. Mining & Mfg. Co., 112 F.3d 306, 309 (8th Cir. 1997) (internal quotations and citation omitted).

The Eighth Circuit has determined that a district court should apply a three-part test when screening testimony under Rule 702.

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

Lauzon, 270 F.3d at 686 (internal citations and quotations omitted). The third part of the test pertains to three elements added to Rule 702 after Daubert and its progeny. Id. These include that "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

**B.    Dr. Lierman's Testimony Expressing an Opinion about Kay's Future Damages and Economic Loss**

There are two sources of future damages that are at issue in defendants' motion to limit Dr. Lierman's opinions and conclusions. The first is the "potential loss of new consulting clients for RK & Associates."[3]

---

[3] RK & Associates is a consulting company founded by Kay.

Sept. 2008 Report, Docket 94, Ex.1 at 6. The second is the "loss stemming from the ARXX employment contract offered to Mr. Kay."[4] Id. Defendants argue that Dr. Lierman's testimony is not supported by the proper methodology with regard to these two sources of Kay's future economic damages.

First, defendants argue that Dr. Lierman did not follow the procedure he articulated in his response to a hypothetical scenario presented to him during his deposition. Second, defendants argue that Dr. Lierman's conclusions are unreliable because they only disclose what Kay's gross income would have been rather than Kay's net income. Finally, defendants argue the methodology is unreliable because it is uncommon for Dr. Lierman to estimate what an individual's employment contract would have been had there been no injury. These arguments pertain to the third part of the test set out in Lauzon and the three elements in Rule 702 that are associated with it.[5] See 270 F.3d at 686.

---

[4] The future loss associated with ARXX is explained as stemming from "the fact that Mr. Kay was not in a position of negotiating strength (due to the recuperation and effects from the accident of July 19, 2006) when discussing the terms of the full-time employment contract with ARXX." Sept. 2008 Report, Docket 94, Ex.1 at 5.

[5] Defendants do not argue that Dr. Lierman is not an expert in the field of forensic economics. Defendants also do not argue that his testimony with regard to Kay's future damages will not assist the jury. Thus, these two requirements of Rule 702 will not be discussed.

The third part of the test set out in Lauzon requires that "the proposed evidence must be reliable or trustworthy in an evidentiary sense." Id. (internal quotation omitted). In order to determine this, the evidence must be "based upon sufficient facts or data" and "the product of reliable principles and methods." Id. Then the witness must have "applied the principles and methods reliably to the facts of the case." Id. These three requirements will be respectively analyzed.

### 1. Whether Dr. Lierman's opinions are based on sufficient facts or data as required by Rule 702

The court finds Dr. Lierman's opinions to be based on sufficient facts and data. Dr. Lierman indicates in his report that he relied on various statistics for purposes of predicting Kay's life expectancy, retirement age, and work-life expectancy. Sept. 2008 Report, Docket 94, Ex.1 at 3. As to the future damages associated with RK & Associates, Dr. Lierman used the company's sales figures as a baseline to extrapolate the company's future earnings. Id. at 5. As to the future damages associated with RK & Associates and ARXX, Dr. Lierman relied on facts obtained from an interview with Kay and his deposition. See, e.g., id. at 4; Dep. of Dr. Walter Lierman, Docket 94, Ex.2 (Dep. Tr.) at 11, 21. These facts provide a sufficient basis for Dr. Lierman's conclusions under Rule 702.

Defendants argue that Dr. Lierman could have obtained additional facts by interviewing some of the officers of ARXX. The fact that Dr.

6

Lierman may have obtained additional data does not demonstrate that Dr. Lierman relied on insufficient facts.  See Structural Polymer Group, Ltd v. Zoltek Corp., 543 F.3d 987, 998 (8th Cir. 2008) ("As a rule, questions regarding the factual underpinnings of the expert's opinion affect the weight and credibility of [the expert's] testimony, not its admissibility."); Margolies v. McCleary, 447 F.3d 1115, 1120-21 (8th Cir. 2006) ("Time and again, we have noted that the factual basis of an expert's opinion generally relates to the weight a jury ought to accord that opinion.").  It also does not matter whether Dr. Lierman relied extensively on what Kay had said.  See Tormenia v. First Investors Realty Co., Inc., 251 F.3d 128, 135 (3d Cir. 2000) ("Rule 702 does not require that experts . . . eschew reliance on a plaintiff's account of factual events[.]").

Rule 702 does not require Dr. Lierman to have all the facts or even the best facts.  It only requires "sufficient facts."  See Fed. R. Evid. 702.  Any weaknesses perceived by defendants in the factual basis of Dr. Lierman's opinions are capable of being brought out in cross-examination and argued to the jury.  Thus, the court finds Dr. Lierman's opinions about Kay's future damages to be supported by sufficient facts as required by Rule 702.

### 2. Whether Dr. Lierman's opinions are the product of reliable principles and methods as required by Rule 702

The court has reviewed Dr. Lierman's report and concludes that it is the product of reliable principles and methods.  Many of the principles used

7

in the report are principles of mathematics that have been repeatedly tested. The methodology used by Dr. Lierman has been accepted by the National Association of Forensic Economists and the American Academy of Economic and Financial Experts. See Aff. of Walter Lierman, Docket 118, Ex. 7 at ¶ 7. It has also been written about and utilized in numerous scholarly works. Id. Rule 702 only requires that the utilized methodology be reliable, not perfectly accurate. Best v. Lowe's Home Ctrs., Inc., 563 F.3d 171, 181 (6th Cir. 2009) ("Admissibility under Rule 702 does not require perfect methodology.").

Defendants argue that Dr. Lierman's methodology is unreliable because of a discussion during his deposition about a hypothetical basketball player claiming he was going "to be drafted in the first round of the NBA." Dep. of Dr. Walter Lierman, Docket 94, Ex. 2 (Dep. Tr.) at 16. The exact nature of that exchange during Dr. Lierman's deposition is as follows:

> Q: And, for instance–again, talking about this hypothetical player I've created now. Okay? Relative to that hypothetical collegiate athlete, one source would maybe be to go to his prospective employers and–for instance, the hypothetical plaintiff tells you that he thinks he was–he would be drafted by the NBA, and then you could find out what the salary structure would be. Is that fair?
>
> A: Yes. That would be a way to do it, yes.

Dep. of Dr. Walter Lierman, Docket 94, Ex.2 (Dep. Tr.) at 17. Defendants argue that Dr. Lierman's methodology is unreliable because he did not apply the same methodology he acknowledged as being acceptable with regard to the hypothetical basketball player.

The court rejects defendants' argument. Dr. Lierman did not state that the methodology suggested by defendants' attorney would be the only acceptable methodology. Rather, he agreed with defendants' attorney that the suggested methodology "would be **a** way to do it." Dep. of Dr. Walter Lierman, Docket 94, Ex.2 (Dep. Tr.) at 17 (emphasis added). The fact that Dr. Lierman acknowledged the existence of an alternative methodology does not make Dr. Lierman's chosen methodology unreliable. See Kudabeck v. Kroger Co., 338 F.3d 856, 861 (8th Cir. 2003) ("Simply because Dr. Reilly did not conduct his examination and treatment of [the plaintiff] in the manner [the defendant] preferred, does not render Dr. Reilly's testimony unreliable."). Thus, the court finds the methodology and principles used by Dr. Lierman to be reliable.

### 3. Whether Dr. Lierman applied the principles and methods reliably to the facts pursuant to Rule 702

The court finds that Dr. Lierman applied the methodology reliably to the facts in this case. His report sets out the steps taken in arriving at Dr. Lierman's conclusions. These steps have been generally accepted by the court and the Eighth Circuit. See Crane v. Crest Tankers, Inc., 47 F.3d

9

292, 295 (8th Cir. 1995) ("If the case involves an issue of future lost wages, generally an expert witness is employed who, once qualified, opines on various issues including work life expectancy, future damages, and methods for discounting the same to present value.").

Dr. Lierman's report explains the various background facts and assumptions relied on in arriving at his conclusion. The report shows how he arrived at Kay's life expectancy, statistical retirement age, and work-life expectancy. See Sept. 2008 Report, Docket 94, Ex.1 at 4. The report also explains how Kay's work-life to retirement ratio was calculated, which involved dividing his projected number of working years by the projected number of years until his retirement.[6] Id.

Then, with regard to Kay's future loss of earnings, the report explains the different sources of Kay's future income and what those sources of income would have been had Kay not been injured. Id. at 4-6. The report also explains the reasoning and cites the source of information for determining what Kay's future income would have been. Id.

Finally, the report explains how the future loss of earnings was adjusted. See id. at 6-7. This was accomplished by determining and applying the growth rate for the applicable period of time, the work-life to

---

[6] The work-life to retirement ratio is used for purposes of adjusting Kay's gross earnings, which is discussed separately.

retirement ratio, and the discount rate for converting the future dollars into present dollar terms.  Id.  Notwithstanding defendants' arguments expressed below, the court finds that Dr. Lierman applied the methodology to the facts in a reliable manner.

First, defendants argue that Dr. Lierman did not follow the procedure mentioned in a hypothetical scenario presented during his deposition. Defendants cite to an excerpt in Dr. Lierman's deposition for purposes of demonstrating that his conclusion is not reliable because he did not apply the proper methodology for purposes of determining Kay's future damages associated with ARXX.  The discussion went as follows:

> Q: But would you agree with me that just talking only to the hypothetical college athlete as to his potential future employment, that that probably would not give you a very clear picture or would not give you enough data to make some opinion as to whether or not he was, in fact–had the skill set to move to the next level.  Is that a fair statement?
>
> A: I would agree.

Dep. of Dr. Walter Lierman, Docket 94, Ex. 2 (Dep. Tr.) at 18.  This exchange between defendants' attorney and Dr. Lierman does not demonstrate that he unreliably applied the methodology in his report to the facts in this case.  Rather, the discussion deals with Dr. Lierman's thoroughness in applying the methodology to the facts in this case.  This matter goes towards the credibility to be given to Dr. Lierman's conclusions

and not their admissibility under Rule 702.  See Kudabeck, 338 F.3d at 861 (stating arguments "regarding the completeness of [the] methodology go to the weight and not the admissibility of his testimony").  The court adheres to the principle that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  Daubert, 509 U.S. at 596, 113 S. Ct. at 2798.  Whether Kay actually had the ability to earn more money from ARXX is a matter that is properly left to the jury.  See Kudabeck, 338 F.3d at 861.

Second, defendants argue that Dr. Lierman's conclusions are unreliable with regard to RK & Associates because they only disclose what Kay's future income would have been in terms of gross income rather than in terms of net income.  Dep. of Dr. Walter Lierman, Docket 94, Ex.2 (Dep. Tr.) at 46 ("I have only given an opinion as to the gross revenues.").  This argument is unpersuasive.  The fact that Dr. Lierman's conclusions could have been more refined does not mean his conclusions are unreliable.  Kudabeck, 338 F.3d at 861 ("[N]othing in Rule 702, Daubert, or its progeny requires 'that an expert resolve an ultimate issue of fact to a scientific absolute in order to be admissible.' " (quoting Bonner v. ISP Tech., Inc., 259 F.3d 924, 929 (8th Cir. 2001)).  This argument does not explain how Dr. Lierman's methodology was unreliably applied to the facts.  Rather, it

goes to a matter that is properly brought to the attention of the jury. See id. (stating arguments "regarding the completeness of [the] methodology go to the weight and not the admissibility of his testimony").

Finally, defendants argue that the methodology is unreliable with regard to future damages associated with ARXX because it is uncommon for Dr. Lierman to estimate what an individual's employment contract would have been had there been no injury. The relevant discussion is as follows:

> Q: Okay. Do you typically, as a forensic economist, try to estimate or predict what someone's employment contract would be but for an injury? Have you ever done that before?
>
> A: I usually don't. It's only on a specific case-by-case basis.

Dep. of Dr. Walter Lierman, Docket 94, Ex.2 (Dep. Tr.) at 40. This exchange between Dr. Lierman and defendants' attorney does not show that Dr. Lierman applied the methodology in an unreliable manner. Rather, it reveals that the methodology is tailored to the facts and issues present in this case.

Dr. Lierman's opinion is supported by sufficient facts and is premised on a reliable methodology. Moreover, Dr. Lierman applied the methodology to the facts in this case in a reliable manner. The court therefore finds that Dr. Lierman's opinions and conclusions about Kay's future damages and lost earnings are reliable and admissible under Rule 702. For these

reasons, defendants' motion in limine to limit or exclude Dr. Lierman's opinions about Kay's future damages is denied.

Based on the foregoing, it is hereby

ORDERED that defendants' motion in limine to exclude or limit Dr. Lierman's testimony (Docket 93) is denied.

Dated August 21, 2009.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE