UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| RICHARD W. KAY and<br>DEANA D. KAY, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>LAMAR ADVERTISING OF SOUTH<br>DAKOTA, INC., a South Dakota<br>corporation, and<br>CODY P. BURTON,<br><br>Defendants/<br>Counter-claimants,<br><br>vs.<br><br>RICHARD W. KAY,<br><br>Counter-defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIV. 07-5091-KES<br><br><br><br><br><br><br>ORDER DENYING DEFENDANTS'<br>MOTION TO LIMIT TESTIMONY<br>OF JUBAL D. HAMERNIK AND<br>JOHN E. HUNTER |

Defendants, Lamar Advertising of South Dakota and Cody Burton, move to limit the testimony of plaintiffs' expert witnesses, Dr. Jubal Hamernik and Mr. John Hunter. Plaintiffs, Richard Kay and Deana Kay, oppose the motion. For the reasons stated below, defendants' motion is denied.

## BACKGROUND

The relevant background for purposes of addressing defendants' motion to limit plaintiffs' expert witnesses is as follows: On July 19, 2006, plaintiffs were involved in a motorcycle accident at an intersection near

Sturgis, South Dakota. Plaintiffs were riding a motorcycle that was driven by Richard Kay. The motorcycle collided with a boom truck owned by defendant, Lamar Advertising, and driven by Cody Burton, an employee of Lamar Advertising.

Plaintiffs claim that Lamar Advertising's truck was negligently operated in such a manner that caused plaintiffs' injuries. Defendants deny any negligence on their behalf and assert several affirmative defenses and a counterclaim against Richard Kay on the basis that Richard Kay had operated the motorcycle in a negligent manner.

Plaintiffs identified three accident reconstruction experts in their Fed. R. Civ. P. 26(a)(2) disclosure statement. These three experts submitted their reports and analyses. The experts were later deposed by defendants. Plaintiffs later stipulated to only using two of the three identified experts: Jubal D. Hamernik, Ph.D., and John Hunter.

Under Rule 702, defendants move to exclude Dr. Hamernik's opinions about the appropriate "drag factor," or "deceleration factor," applied to the motorcycle operated by Richard Kay. Defendants also seek to exclude Dr. Hamernik's opinions relating to defendants' negligence. Plaintiffs resist this motion.

With regard to Hunter, defendants move under Rule 702 to exclude his opinions related to Richard Kay's speed. Defendants also move to

2

exclude Hunter's opinion that defendants' negligence caused the accident. Plaintiffs resist this motion as well.

**DISCUSSION**

**1.     Standard for Admissibility of Expert Testimony**

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence.[1]  District courts have discretion in determining whether to admit expert witness testimony under Rule 702.  See <u>In re Air Crash at Little Rock Arkansas, on June 1, 1999</u>, 291 F.3d 503, 509 (8th Cir. 2002).  The proponent of expert testimony must prove its admissibility by a preponderance of the evidence.  <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 592 n.10, 113 S. Ct. 2786, 2796, 125 L. Ed. 2d 469 (1993).

Under Rule 702, the trial judge acts as a "gatekeeper" screening evidence for relevance and reliability.  <u>Id.</u> at 589, 113 S. Ct. at 2795.  "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony.  The rule clearly is one of admissibility rather than

---

[1]Rule 702 was amended in 2000 to read as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

exclusion." Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001) (internal quotations and citations omitted). "The exclusion of an expert's opinion is proper only if it is so fundamentally unsupported that it can offer no assistance to the jury." Wood v. Minn. Mining & Mfg. Co., 112 F.3d 306, 309 (8th Cir. 1997) (internal quotations and citation omitted).

The Eighth Circuit has determined that a district court should apply a three-part test when screening testimony under Rule 702.

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

Lauzon, 270 F.3d at 686 (internal citations and quotations omitted). The third part of the test pertains to three elements added to Rule 702 after Daubert and its progeny. Id. These include: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

A. **Dr. Hamernik**

i. **Admissibility of Dr. Hamernik's Opinions Related to "Drag Factor" and "Deceleration Rate"**

Defendants argue that any statements by Dr. Hamernik about the applicable "drag factor"[2] and "deceleration rate" in this case are inadmissible under Rule 702.[3] Defendants assert that Dr. Hamernik failed to identify any authority to support his statements about the applicable drag factor. This assertion pertains to the third part of the test set out in Lauzon and the three elements in Rule 702 that are associated with it. See 270 F.3d at 686.[4] The third part of the test set out in Lauzon requires that "the proposed evidence must be reliable or trustworthy in an evidentiary sense."

---

[2] The "drag factor" is a term that refers to a number used for purposes of determining the speed of a vehicle when the vehicle has left skid marks in the process of stopping. See July 2008 Report, Docket 112, Ex. 15 at 88. It is best understood by associating it with the term "slippery." The higher the "drag factor," the shorter the distance needed to come to a stop. The lower the "drag factor," the longer the distance needed to come to a stop. For example, a sheet of ice would generally have a lower drag factor than a paved road. Thus, the distance needed to stop on ice would be greater than the distance needed to stop on a paved road if everything else was equal.

[3] Although the terms "drag factor" and "deceleration rate" appear to be different from one another in a technical sense, these two terms are grouped together in defendants' motion and interchangeably used in Dr. Hamernik's deposition. Because the analysis is the same with regard to both of these terms, the term "drag factor" will be used for purposes of simplicity.

[4] Defendants have not alleged that Dr. Hamernik is not an expert on accident reconstruction. Also, defendants have not alleged that his testimony will not assist the trier of fact. See Fed. R. Evid. 702. Those requirements of Rule 702 will therefore not be addressed.

Id. (internal quotation omitted). In order to determine this, the evidence must be "based upon sufficient facts or data" and "the product of reliable principles and methods." Id. Then the witness must have "applied the principles and methods reliably to the facts of the case." Id. These three requirements will be respectively analyzed.

### ii. Whether Dr. Hamernik's statements were based upon sufficient facts as required by Rule 702

Dr. Hamernik's statements about the drag factor are supported by several facts that Dr. Hamernik mentioned in his deposition. First, he noted the drag factor was affected by the number of people on the motorcycle. See Dep. of Jubal Hamernik, Docket 118, Ex. 5 at 25 ("In this case we have a man on a motorcycle with . . . an occupant on the back, which makes it incredibly more difficult to apply optimal braking. That's why I think in this case a .5, .55 on the high end is more applicable as being the maximum rate of deceleration."). There can be no disputing the fact that there were two motorcycle occupants.

Additionally, Dr. Hamernik identified that the drag factor was impacted by the presence of a "moving stimuli," which was defendants' truck that was moving across the highway. Id. at 21 (explaining the presence of a lower drag factor "when you have a heavy stimuli coming from right to left"). During the deposition, the following exchange took place and demonstrates how Dr. Hamernik's statements are supported by facts:

6

> Q: And you have a vehicle pull out from [the motorcycle's] right to its left, how does that affect the deceleration rate?
>
> A: Well, it's likely, as in this case, that some point you recognize a vehicle pulled out in such close proximity that he cannot stop in time.
>
> Q: Okay.
>
> A: So that's--you have to implement potentially changing direction, which appears in this case the rider at the last moment tried to veer or lean or steer towards his left to avoid the truck.
>
> Q: What does that do to the deceleration rates?
>
> A: It reduces the deceleration. Its lowers the magnitude.

Id. at 22-23. The answers given in the deposition demonstrate that Dr. Hamernik's statements were premised on the fact that plaintiffs on the motorcycle were reacting to the presence of defendants' truck.

The facts in this case support Dr. Hamernik's statements about the drag factor being affected by the presence of an additional occupant and the act of trying to avoid defendants' truck. Thus, Rule 702's requirement that sufficient facts support the expert's opinion is satisfied.

### iii. Whether Dr. Hamernik's statements were the product of reliable principles and methods as required by Rule 702

Dr. Hamernik indicated numerous times that his statements about the drag factor were supported by other papers and studies. As to the

statement that a lower drag factor was present on account of the truck crossing plaintiffs' lane, the following exchange took place:

> Q: What does that do to the deceleration rates?
>
> A: It reduces the deceleration. It lowers the magnitude.
>
> Q: Okay. And *have you seen any studies or reviewed any studies that quantify that distinction or change in the deceleration rate*?
>
> A: Yes.

Id. at 23 (emphasis added). Then a few moments later, the following was said:

> Q: Although not referenced in your report, are there any studies you're relying upon to support your opinion that the deceleration rate would be lower because we had a moving object?
>
> A: I'm not relying upon them, no. *They're consistent with my opinion* but they're not relied upon.

Id. at 23 (emphasis added). These exchanges between Dr. Hamernik and defendants' attorney reveal that Dr. Hamernik's statements in the deposition were supported by outside studies.

As to the statements about the drag factor being different because there were two motorcycle occupants, Dr. Hamernik stated that "everything from the driver's manual or motorcycle's operating manual to SADE publications to all kinds of other publications indicate that it's difficult to maintain optimal braking without loss of control when you have an

8

occupant on a motorcycle, especially a cruiser-type motorcycle, as involved in this case." Id. at 26; see also id. at 27 (affirming that there was "literature that would support the opinion that . . . the deceleration rate would be reduced by as much as three-tenths–as much as four-tenths because a passenger's on the back"); id. at 70 (reaffirming that "people have published papers [and] quantified the difference between an operator and an operator with a passenger in the deceleration").

Finally, Dr. Hamernik indicated that he has reviewed the literature and stated that it is consistent with his statements and conclusions. Aff. of Jubal Hamernik, Docket 118, Ex. 3 at ¶ 11 ("The drag factors utilized by this engineer within the reconstruction and evaluation of the subject accident are *proper as confirmed by review of published literature.*") (emphasis added). Defendants' attorney has not explained how Dr. Hamernik's statements are the product of unreliable principles and methods. The court therefore finds that Dr. Hamernik's statements about the drag factor are the result of reliable principles and methods as required by Rule 702.

### iv. Whether Dr. Hamernik applied the principles and methods reliably to the facts pursuant to Rule 702

The court also finds that Dr. Hamernik applied the principles and methods reliably to the facts of the case. With regard to the presence of a moving stimuli, Dr. Hamernik explained, "even a driver's manual says you

can't change direction when you have your brakes locked[.]" Dep. of Jubal Hamernik, Docket 118, Ex. 5 at 22.  Here, the facts show that the driver of the motorcycle did turn because the skid mark left by the motorcycle shows that a turn of some degree took place.  Id. at 63-64 ("It indicates [the motorcycle driver is] applying varying levels of braking, as well as that he's attempting to change direction while braking.").  This indicates that the motorcycle's brakes were not fully engaged as expressed by the following questions and answers:

> Q:   And as you--as you look at the variations and the color of the skid mark, can you make a determination from the change in the color as to whether or not he went from just--from both front and rear brake to just rear braking?
>
> A:   At the time of change of direction, yes.
>
> Q:   At the time it changes direction, you can tell that, right?
>
> A:    Yes.

Id. at 64.  This suggests that Dr. Hamernik reliably applied the principles associated with a moving stimuli to the facts in this case and concluded that the optimal drag factor was not applicable.  See id. at 22-23.

Dr. Hamernik also applied the principles associated with an additional passenger to the facts in this case in a reliable manner.  He concluded that an additional "passenger would indeed affect the rate of deceleration in that it would be far more difficult to maintain dynamic stability of the motorcycle[.]"  Id. at 69.  That opinion appears to have been

the result of applying the principles, found in "everything from the . . . motorcycle's operating manual to SADE publications," to the fact that there was an additional passenger on the motorcycle. See id. at 26 (discussing how the presence of another occupant on a motorcycle prevents the application of the optimal drag factor).

Defendants have not identified any inconsistencies with Dr. Hamernik's answers or explained how he has unreliably applied the principles and/or methodology to the facts with regard to the applicable drag factor. Any objections defendants have to Dr. Hamernik's testimony go to the weight to be given his opinion and not its admissibility. The court finds that Dr. Hamernik's statements, opinions, and conclusions about the drag factor are admissible under Rule 702.

    **v.**  **Opinions Related to Defendants' Negligence**

The court also denies defendants' motion in limine to limit any other testimony that may be offered by Dr. Hamernik regarding defendants' negligence because Rule 704(a) specifically allows for evidence that "embraces an ultimate issue to be decided by the trier of fact." Thus, Dr. Hamernik's opinion that Burton was negligent based on the facts as he has reviewed them is admissible. To the extent that defendants move in limine more generally to preclude Dr. Hamernik's opinions regarding negligence and contributory negligence, the motion is denied as overly

broad. The role of a motion in limine is to "sharpen[] the focus of later trial proceedings and permit[] the parties to focus their preparation on those matters that will be considered by the jury." Jonasson v. Lutheran Child and Family Servs., 115 F.3d 436, 440 (7th Cir. 1997). It is not the function of a motion in limine to prematurely resolve an issue that ought to be "determined in a more concrete setting." Id. Nor is it this court's role to "invade the province of the jury, whose job it is to decide issues of credibility and to determine the weight that should be accorded evidence." United States v. Vesey, 338 F.3d 913, 917 (8th Cir. 2003). The proper time for determining whether any other potential aspects of Dr. Hamernik's testimony is admissible under Rule 704 is during Dr. Hamernik's testimony. See id.

Defendants also move in limine to preclude admission of Dr. Hamernik's report. Assuming Dr. Hamernik testifies, then his report will likely be needlessly cumulative, duplicative, and inadmissable under Rule 403. The court will reserve ruling on the admissibility of the report, however, until the trial.

For these reasons, defendants' motion in limine to limit or exclude Dr. Hamernik's statements is denied.

**B.    John Hunter**

Defendants argue that any statements by Hunter about plaintiffs' speed[5] and defendants' negligence is inadmissable under Rule 702 and Rule 704.  Defendants contend that Hunter failed to support his statements with sufficient facts and failed to explain the methodology he used to arrive at his conclusions.  For the reasons stated below, the court denies defendants' motion in limine.

**i.    Admissibility of Hunter's Statements about Richard Kay's Speed**

Defendants do not allege that Hunter is unqualified to give an expert opinion or that his opinion would not assist the trier of fact.  As a result, the court will examine whether the proposed testimony is reliable or trustworthy in an evidentiary sense under part three of the Lauzon test.

Hunter's opinions regarding Richard Kay's speed are supported by the facts, namely the pre-collision tire mark left by the Kay motorcycle, the damage to the motorcycle, and the location of Richard and Deana Kay after the accident.  Thus, there are sufficient facts to support Hunter's opinion as is required by Rule 702.

---

[5] It is not entirely clear which conclusions about plaintiffs' speed defendants would like this court to address.  Both sections cited in defendants' brief pertain to plaintiffs' speed at the moment of impact.  Thus, the court will address defendants' motion in that regard.

Hunter applied calculation and analytical methods that are well accepted within the collision reconstruction community and have been taught on a regular basis in the field since the 1950s to determine the speed of Richard Kay's motorcycle pre-collision. It appears to the court that Hunter applied reliable principles and methods in forming his opinions. And finally, from a review of Hunter's opinions, the court is satisfied that he applied the principles and methods reliably to the facts of this case. As a result, the court finds that Hunter's statements, opinions, and conclusions regarding Richard Kay's speed are admissible under Rule 702.

      **ii.    Admissibility of Hunter's Statements about Defendants' Negligence**

The same reasoning and discussion with regard to defendants' motion on Dr. Hamernik's potential testimony about defendants' negligence applies to Hunter's potential testimony on such matters. It bears repeating, however, that it is not this court's role to "invade the province of the jury, whose job it is to decide issues of credibility and to determine the weight that should be accorded evidence." Vesey, 338 F.3d at 917. For these reasons, defendants' motion in limine as to Hunter's testimony is therefore denied.

Based on the foregoing, it is hereby

ORDERED that defendants' motions in limine to exclude or limit Dr. Hamernik's testimony (Docket 95) and Hunter's testimony (Docket 99) are denied.

Dated August 21, 2009.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE