UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| LAMAR ADVERTISING OF SOUTH DAKOTA, INC., a South Dakota corporation, and CODY P. BURTON, | ) ) ) ) ) | CIV. 07-5091-KES |
| Plaintiffs, | ) ) | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL** |
| vs. | ) ) | |
| RICHARD W. KAY, | ) ) | |
| Defendant. | ) | |

**INTRODUCTION**

The original plaintiffs in this action, Richard and Deana Kay, brought the

original lawsuit in December, 2007, alleging negligence against original

defendants Lamar Advertising of South Dakota, Inc. ("Lamar") and Cody

Burton, and seeking damages for injuries arising from a motor vehicle collision.

Docket No. 1. Jurisdiction was founded on diversity of citizenship among the

parties and an amount in controversy of at least $75,000. See 28 U.S.C.

§ 1332. The Kays settled their claim against Lamar and Mr. Burton in October,

2009. Throughout the proceedings and settlement, Lamar indicated its belief

that Mr. Kay was contributorily negligent, as well as its intent to seek

contribution from Mr. Kay as to the settlement paid to Mrs. Kay.

On December 15, 2009, Mr. Kay filed a motion requesting a

determination by the district court that the settlement allocation paid by Lamar

to Mrs. Kay was unreasonable. Docket No. 143. On or about December 10, 2009, Mr. Kay served plaintiffs with various discovery requests regarding the settlement and allocation. Docket No. 181. In January, 2010, plaintiffs served responses to Kay's requests. Id. Plaintiffs' responses denied knowing what "settlement negotiations" meant, asserted that the information sought was available through Kay's former counsel, and objected based on the attorney-client and work product privileges. Thereafter defendant Kay filed this motion to compel production, pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37.1. The district court, the Honorable Karen E. Schreier, Chief Judge, referred the motion to this magistrate judge for resolution pursuant to 28 U.S.C. § 636(b)(1)(A).

## FACTS

The facts, insofar as they are pertinent to the present motion, are as follows. Mr. and Mrs. Kay were injured on July 19, 2006, when a boom truck driven by Cody Burton, an employee acting within the scope of his employment with Lamar, collided with the Kays' motorcycle. The Kays filed suit against Lamar and Mr. Burton in December, 2007. Docket No. 1. Lamar and Burton filed a counterclaim against Mr. Kay in March, 2008. Docket No. 29. The Kays settled their claim against Lamar and Burton in October, 2009, but Lamar and Burton advised their intent to seek contribution from Mr. Kay for payment made to Mrs. Kay for her injuries. The Kays did not inform counsel

representing Mr. Kay on Lamar's counterclaim against him, Attorney Heather Lammers Bogard, as to the details of the settlement allocation between Mr. and Mrs. Kay. Attorney Eric Neiman, who represented the Kays through the date of settlement, withdrew from representation on December 2, 2009. Docket No. 142. The district court realigned the parties when Lamar and Mr. Burton sought contribution from Mr. Kay for payment made to Mrs. Kay in settlement for her injuries. Accordingly, the original plaintiff Mr. Kay is now the defendant in the action, and the original defendants are now the named plaintiffs. See Docket No. 146.

Following the settlement, Mr. Kay's counsel on the contribution claim filed a motion for a determination that the settlement allocation was unreasonable. Docket No. 143. In support of that motion, Mr. Kay asserted that the total settlement among the original parties was $1.5 million, and that Mrs. Kay received an allocation of $525,000, despite evidence showing that her actual medical bills totaled approximately $126,500.[1] Id. Mr. Kay's medical bills, however, totaled $512,000, and his claimed loss of income and lost stock options were in excess of $6 million. Id. Mrs. Kay asserted no claim for lost

---

[1]Since the date of the district court's referral to this magistrate, plaintiffs have stipulated to the amount of medical bills incurred by Mrs. Kay as a result of the accident, but have not stipulated that the treatment Mrs. Kay received was reasonable or necessary, or that such costs were incurred as a proximate result of the accident. See Docket No. 208. Plaintiffs have continued to deny liability for the accident itself and have denied responsibility for payment of Mrs. Kay's medical bills. Id.

earning capacity.  Id.  The plaintiffs resisted Mr. Kay's motion for a
determination that the settlement allocation was unreasonable.  Docket No.
148.

Mr. Kay served various discovery requests on the plaintiffs in December,
2009.  The plaintiffs objected to the requests and supplied only limited
responses on January 19, 2010.  Docket No. 198.  Mr. Kay thereafter requested
that plaintiffs' counsel revisit the discovery requests to see whether any of
plaintiffs' answers could be supplemented.  Plaintiffs continued to object on
grounds that the information sought was privileged and otherwise readily
discoverable through former counsel, but nonetheless provided supplemental
discovery responses on or near February 1, 2010.  Docket No. 196.  Despite
admitting that they have provided additional discovery beyond the district
court's discovery deadline of December 5, 2008, plaintiffs now assert an
objection to Mr. Kay's motion to compel on grounds that the district court's
deadline for discovery has passed.  Id.

Mr. Kay asserts that plaintiffs' initial answers to his requests, as well as
their supplemental responses, are inadequate.  Mr. Kay also notes that
although the plaintiffs objected on grounds of privilege, they failed to provide

an appropriate privilege log pursuant to <u>Vaughn v. Rosen</u>[2], and did not describe the nature of any of the withheld information pursuant to Federal Rule 26(b)(5)(A)(ii) so that he could assess the plaintiffs' claims. Mr. Kay argues that discovery as to the approximation of the Kays' total recovery, Lamar's proportionate liability, and other factors as to the reasonableness of the settlement goes to the heart of plaintiffs' claim that they are entitled to contribution from Mr. Kay, and that any information relating to the settlement allocation and settlement negotiations is discoverable. Docket No. 180, at 5.

Plaintiffs resist Mr. Kay's motion to compel on various grounds, including that the information sought is either subject to privilege, is readily obtainable through former counsel, or does not exist. Docket No. 201.

## DISCUSSION

## A.   **Whether the Information Sought is Discoverable**

### 1.   **Scope of Discovery Under Rule 26**

Federal Rule of Civil Procedure 26(b)(1) sets forth the standard governing the scope of discovery in civil cases:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature,

---

[2]See <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), *cert denied*, 415 U.S. 977 (1974) (requiring parties whom object to discovery on grounds of privilege to itemize and index the documents allegedly exempt from discovery, so the court may determine whether any protection or privilege actually applies).

custody, condition, and location of any documents or other
tangible things and the identity and location of persons who know
of any discoverable matter.  For good cause, the court may order
discovery of any matter relevant to the subject matter involved in
the action.  Relevant information need not be admissible at the
trial if the discovery appears reasonably calculated to lead to the
discovery of admissible evidence.  All discovery is subject to the
limitations imposed by Rule 26(b)(2)(C).

See Fed. R. Civ. P. 26(b)(1).

The advisory committee's note to the 2000 amendments to Rule 26(b)(1)

provide guidance on how courts should define the scope of discovery in a

particular case:

Under the amended provisions, if there is an objection that
discovery goes beyond material relevant to the parties' claims or
defenses, the court would become involved to determine whether
the discovery is relevant to the claims or defenses and, if not,
whether good cause exists for authorizing it so long as it is relevant
to the subject matter of the action.  The good-cause standard
warranting broader discovery is meant to be flexible.

The Committee intends that the parties and the court focus on the
actual claims and defenses involved in the action.  The dividing
line between information relevant to the claims and defenses and
that relevant only to the subject matter of the action cannot be
defined with precision.  A variety of types of information not
directly pertinent to the incident in suit could be relevant to the
claims or defenses raised in a given action.  For example, other
incidents of the same type, or involving the same product, could be
properly discoverable under the revised standard. ... In each case,
the determination whether such information is discoverable
because it is relevant to the claims or defenses depends on the
circumstances of the pending action.

The rule change signals to the court that it has the authority to
confine discovery to the claims and defenses asserted in the
pleadings, and signals to the parties that they have no entitlement
to discovery to develop new claims or defenses that are not already

> identified in the pleadings. ... When judicial intervention is
> invoked, the actual scope of discovery should be determined
> according to the reasonable needs of the action.  The court may
> permit broader discovery in a particular case depending on the
> circumstances of the case, the nature of the claims and defenses,
> and the scope of the discovery requested.

<u>See</u> Fed. R. Civ. P. 26(b)(1) advisory committee's note.

The same advisory committee's note further clarifies that information is discoverable only if it is relevant to the claims or defenses of the case or, upon a showing of good cause, to the subject matter of the case.  <u>Id.</u>  "Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings.  Relevancy . . . encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' "  <u>E.E.O.C. v. Woodmen of the World Life Ins. Society</u>, 2007 WL 1217919 at *1 (D. Neb. March 15, 2007) (quoting <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978)).  The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required."  <u>Id.</u> (citing <u>Hofer v. Mack Trucks</u>, <u>Inc.</u>, 981 F.2d 377, 380 (8th Cir. 1993)).  "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case."  <u>Id.</u> (citing <u>Cervantes v. Time, Inc.</u>, 464 F.2d 986, 994 (8th Cir. 1972)).

Discoverable information itself need not be admissible at trial; rather, "discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence." <u>See</u> Fed. R. Civ. P. 26(b)(1) advisory committee's note.  Additionally, Rule 26(b)(2) requires the court to limit discovery if it determines, for example, that the discovery sought is unreasonably cumulative or duplicative or that "the burden or expense of the proposed discovery outweighs its likely benefit..." <u>See</u> Fed. R. Civ. P. 26(b)(2)(C); <u>see also</u> <u>Roberts v. Shawnee Mission Ford, Inc.</u>, 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); <u>Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton</u>, 136 F.R.D. 682, 684-85 (D.Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

### 2.     The Right of Contribution and Reasonableness of Settlement

In this case, plaintiffs seek contribution from the defendant, Mr. Kay, following settlement with him and his wife.  South Dakota state substantive law governs the underlying diversity action.  <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938).  Under South Dakota law, contribution is available to a

settling tortfeasor.  SDCL § 15-8-12.  South Dakota statutory law does not specifically provide that in order to recover contribution from a joint tortfeasor with whom the defendant has settled, a defendant must prove that the settlement reached was reasonable, but the South Dakota Supreme Court has acknowledged that "[i]n contribution actions, 'a compromiser must sustain the burden of proof, not only as to the compromiser's own liability to the original plaintiff, but also as tot he amount of damages and the reasonableness of the settlement.' " <u>Plato v. State Bank of Alcester</u>, 555 N.W.2d 365, 368 n.3 (S.D. 1996) (dictum) (quoting W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS 50 at 339 (5th ed. 1984) (footnote omitted)).

Neither party cites any South Dakota case that is directly on point to demonstrate the plaintiffs' duty to demonstrate the reasonableness of the settlement before they may recover contribution from Mr. Kay.  Instead, both parties cite <u>Cook v. State</u>, 746 N.W.2d 617, 622 (Iowa 2001), for the proposition that the right to contribution by a joint tortfeasor may be defeated if the settlement was not reasonable.  <u>See</u> Docket Nos. 148, 180.  The Eighth Circuit has acknowledged that "[c]ontribution is available to a settling tortfeasor if the amount paid in settlement is reasonable." <u>Transport Ins. Co. v. Chrysler Corp.</u>, 71 F.3d 720, 722 (8th Cir. 1995) (citing <u>Automobile Underwriters Corp. v. Harrelson,</u> 409 N.W.2d 688, 690 (Iowa 1987)).  The general rule is that "[t]he reasonableness of the settlement is always open to inquiry in [a] suit for

contribution, and the tortfeasor making [the settlement payment] has the burden of establishing the reasonableness of the payment he has made." RESTATEMENT (SECOND) OF TORTS 886A cmt. (2):(d).

Given the foregoing, the right to *recover* contribution does not automatically follow the right to simply *seek* contribution. See Perrella v. Shorewood RV Center, No. Civ.03-424, 2004 WL 741567, at *3 (D. Minn. March 31, 2004) (citing Neussmeier Electric, Inc. v. Weiss Mfg Co., 632 N.W.2d 248, 253 (Minn. Ct. App. 2001)). "Where a defendant seeks contribution from a third-party defendant for settlement payments, it is the defendant's burden to demonstrate that the settlement was reasonable." Samuelson v. Chicago, Rock Island and Pacific R.R. Co., 178 N.W.2d 620, 622 (Minn. 1970). The defendant must also demonstrate "that [the settling tortfeasor] paid more than its 'fair share' of the liability burden." Nuessmeier Electric, 632 N.W.2d at 253. " 'Fair share' is measured by the extent to which each tortfeasor could be liable to the injured parties." Id.

Here, the plaintiffs seek contribution from Mr. Kay as to the settlement paid by plaintiffs to Mrs. Kay. In order for plaintiffs to actually recover contribution for the settlement payments they made to Mrs. Kay, they must make a prerequisite showing that the underlying settlement was reasonable. Clearly, details about the settlement qualify as a matter that bears on, or that reasonably could lead to other matter that could bear on, whether the

settlement was reasonable.  Therefore, details of the settlement and settlement

negotiations are relevant to plaintiffs' claim for contribution against Mr. Kay.

Therefore, the documents sought by Mr. Kay relating to settlement negotiations

and the settlement allocation are discoverable unless some exemption based on

privilege or other exception applies.  The court now turns to the specific

discovery requests made by Mr. Kay, and the plaintiffs' respective responses

and objections, to determine whether any of the requested information is

exempt from discovery.

**B.     Interrogatory No. 1 and Request for Production No. 3**

Mr. Kay's first interrogatory and third request for production seek copies

of detailed information about the settlement negotiations that took place

between plaintiffs and defendant's former counsel, to include (1) the date of all

discussions/negotiations; (2) the manner or mode of each communication; and

(3) the content of each communication.  Docket No. 196, at 4.  Plaintiffs

initially responded by objecting on grounds that they did not know what was

meant by "settlement negotiations," and that any such information was

available to Mr. Kay through his former counsel of record, Eric Neiman.  Id.

Plaintiffs later supplemented their answer by noting that there were "on and off

negotiations" among counsel and clients for "more than an eighteen month

period of time."  Id.  Plaintiffs attached bates-stamped "copies of the documents

which generally chronicle those communications" and again noted that all of

the information was available through Mr. Kay's former counsel.  Id.  There is

no indication that the plaintiffs disclosed the content of each of the

communications at issue, and Mr. Kay's reply brief does not indicate whether

the bates-stamped documents he received from plaintiffs are responsive to his

request.  See Docket No. 201.

### 1. The Appropriate Scope of Discovery Where Documents Were Previously Produced to Former Counsel

Mr. Kay argues that this court should construe Rule 26(b)(2)(C)(i) as

requiring plaintiffs to provide copies of documents or information apparently

obtainable through Mr. Kay's former counsel.  Mr. Kay argues that Rule 26

permits a court to "limit discovery if it is shown that the information can be

obtained from another source that is 'more convenient, less burdensome, or

less expensive.' "  Docket No. 180 (quoting Fed. R. Civ. P. 26(b)(2)(C)(I)).

Mr. Kay's former counsel, Attorney Eric Neiman, who represented the Kays

throughout settlement negotiations, resides in Oregon state and withdrew from

representation in December, 2009.

The plaintiffs have not demonstrated that obtaining discovery from Kay's

former counsel is more convenient, less burdensome, or less expensive than

obtaining the documents from plaintiffs, who are located in Rapid City, South

Dakota.  Rule 26 is intended to "guard against redundant or disproportionate

discovery," but neither party has presented evidence that the discovery from

plaintiffs with respect to Interrogatory 1 and Request for Production 3 is

unreasonably cumulative, redundant or disproportionate.  <u>Benson v. Giordano</u>, No. 05-Civ-4088, 2007 WL 2355783, at * 2 (D.S.D. Aug. 17, 2007); Fed. R. Civ. P. 26 advisory committee's notes to 1983 amendments.  Rather than weigh the respective convenience to or burdens incurred by Mr. Kay or plaintiffs, the court is of the opinion that efficiency and prudence weigh in favor of compelling plaintiffs to produce the documents rather than requiring Mr. Kay to obtain the documents from former counsel who is no longer a participant in this litigation.

Implicit in plaintiffs' objection and refusal to produce documents is that Mr. Kay should instead pursue legal remedies against his former counsel in order to obtain documents which plaintiffs admit they possess.  Federal Rule 26(b)(1) permits the court to order "discovery of any matter relevant to the subject matter involved in the action" upon a showing of good cause.  Fed. R. Civ. P. 26(b)(1).  The court believes Mr. Kay has shown sufficient good cause to justify an order compelling disclosure from plaintiffs of any documents previously provided to Mr. Kay's former counsel.  <u>See</u> Fed. R. Civ. P. 26(b)(1).

The Federal Rules permit the court to order a party seeking discovery to pay the expenses incurred by production of the requested documents.  Accordingly, this court orders plaintiffs to produce the documents sought by Mr. Kay which it claims are otherwise obtainable through former counsel, provided that Mr. Kay pays the reasonable expenses incurred by plaintiffs in producing the documents.  <u>See</u> Fed. R. Civ. P. 37(a)(5)(C).

## 2.  Plaintiffs' Representation that "It is Unknown What is Meant By Settlement Negotiations"

The court notes that plaintiffs initially objected to Mr. Kay's request on grounds that they did not know what "settlement negotiations" meant.  The court believes this objection borders on the frivolous, was not made in good faith, and directs plaintiffs to refrain from raising further similar objections.  In the event either party raises a frivolous objection to any further interrogatories, the court recommends that the district court entertain a motion pursuant to Federal Rule 37 for costs and sanctions or other appropriate relief.  See Fed. R. Civ. P. 37(b)(2).

## C.  Interrogatory No. 2 and Request for Production No. 4

Mr. Kay's second interrogatory and fourth request for production seek information about all discussions regarding settlement allocation between plaintiff's counsel or his clients and Mr. Kay's former counsel, Eric Neiman, to include (1) the date of all discussions; (2) the manner of communication; and (3) the content of each communication.  Docket No. 196, at 4-5.  Plaintiffs responded by stating that settlement communications were "ongoing throughout the litigation" and that the information was otherwise available to Mr. Kay's former counsel.  Id. at 4.  Plaintiffs said the communications occurred via telephone, email, and correspondence, and referred Mr. Kay to the bates-stamped documents accompanying the supplemental response to Interrogatory 1.  Id.  Plaintiffs' counsel asserts that he "personally conducted a

review of all correspondence and documents" in his possession with respect to conversations with plaintiffs, and that no correspondence or documentation exists regarding allocation of settlement monies.  Id. at 5.

### 1.  Objection on Grounds that Information is Otherwise Available Through Former Counsel.

As this court has already set forth *supra*, plaintiffs are directed to produce any and all information in their possession that they claim is "otherwise available" through Mr. Kay's former counsel of record but that is responsive to Mr. Kay's discovery requests.  Mr. Kay shall pay the reasonable cost of plaintiffs' production of the information.  See Fed. R. Civ. P. 37(a)(5)(C).

### 2.  Whether Plaintiffs' Answers are Satisfactory

Mr. Kay's Interrogatory 2 and Request for Production 4 request the specific date of any settlement discussions had between plaintiffs or their counsel, and Mr. Kay or his counsel, as well as the manner of each communication.  Plaintiffs' response states only that communication was "ongoing throughout the litigation," which lasted for approximately eighteen months, and that telephone, email, and written correspondence took place during that time.  Docket No. 196, at 4.  The court finds plaintiffs' answers to be incomplete and generally nonresponsive.  A response of "ongoing" to a request for dates certain over the course of a period of eighteen months is not sufficient.  Certainly plaintiffs' counsel kept records of communications had with Mr. Kay and his counsel for billing purposes as well as to inform his client

of what was taking place in the case, and it is unlikely that any such records

kept would be undated or unspecific as to the type of communication that was

exchanged.  Plaintiffs' answer suggests to this court that plaintiffs did not

undertake to answer Mr. Kay's request in good faith.

Accordingly, the court directs plaintiffs's counsel to examine his files and

determine dates certain upon which discussions took place as to settlement

allocation, as well as the type of communication that was had on each of those

respective dates.  Plaintiffs' answer should disclose those dates to Mr. Kay, as

well as the specific manner of each communication, as requested in

Interrogatory 1.

**D.    Interrogatory No. 3  and Request for Production No. 5**

Mr. Kay's third interrogatory and fifth request for production seek

detailed descriptions of all discussions about the settlement allocation between

plaintiffs' counsel and Lamar (including discussions had between either party's

representatives or clients), to include (1) the date of all discussions; (2) the

manner of communication; and (3) the content of each communication.  Docket

No. 196, at 5-6.  Request for Production 5 seeks copies of all documents

referred to in plaintiffs' answer to Interrogatory 3.  Plaintiffs initially responded

by stating that the information sought was subject to the attorney-client

privilege, and later supplemented its answer by asserting that, subject to the

privilege objection, there were no documents responsive to the request.  Id. at

6.

Mr. Kay argues that Rule 26(b)(5)(A)(ii) requires that plaintiffs invoking

either the attorney-client or work product privilege describe the nature of any

privileged documents or communications, so that the opposing party may

assess the claims, and that plaintiffs have failed to so describe the documents

or communications.  Docket No. 180, at 5.  Mr. Kay also argues that any

privledge has been waived because plaintiffs paid the Kays in settlement

despite denying liability for the motor vehicle accident that caused the Kays'

injuries and maintaining that Mr. Kay was solely liable for the accident.  Id.

Plaintiffs assert that Mr. Kay's request seeks mental impressions by counsel

that are privileged and exempt from discovery.

### 1.      The Attorney-Client  Privilege

The attorney-client privilege protects the confidentiality of

communications between attorney and client made for the purpose of obtaining

legal advice.  In a diversity action, state law determines both the existence and

scope of the attorney-client privilege.  Fed. R. Evid. 501; Gray v. Bicknell, 86

F.3d 1472, 1482 (8th Cir. 1996); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78

(1938) ("Except in matters governed by the Federal Constitution or by acts of

Congress, the law to be applied in any case is the law of the state.").

Four elements must be present to invoke the attorney-client privilege: (1) a client; (2) a confidential communication; (3) the communication was made for the purpose of facilitating the rendition of professional legal services to the client; and (4) the communication was made in one of the five relationships enumerated in SDCL § 19-13-3. State v. Rickabaugh, 361 N.W.2d 623, 624-25 (S.D. 1985) (quoting State v. Catch The Bear, 352 N.W.2d 640, 645 (S.D.1984)); SDCL § 19-13-3. The party claiming the privilege carries the burden of establishing all of the essential elements. Id.

With respect to Interrogatory 3 and Request for Production 4, which seek detailed descriptions of all discussions regarding settlement allocation between plaintiffs and their counsel, the court agrees that plaintiffs are required to describe the nature of any withheld documents or communications, pursuant to Fed. R. Civ. P. 26(b)(5)(A)(ii), so that Mr. Kay can assess the claim of privilege. Rule 26(b)(5)(A)(ii) states that a party who "withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material," the party must expressly make the claim and "describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). Plaintiffs have asserted that the information sought by Mr. Kay is privileged, but plaintiffs have not

complied with Rule 26(b)(5)(A)(ii).  To that end, the court directs plaintiffs to

comply with Rule 26(b)(5)(A)(ii) by describing the nature of the communications

withheld, so that Mr. Kay and counsel can assess the claim of privilege.

## 2. **Vaughn** Index

Here, the court is unable to definitively determine whether the

documents or information sought by Mr. Kay is covered by the attorney-client

privilege based on the plaintiffs' mere assertion that the protection applies.

The party asserting the protection of a privilege bears the burden of proving

each element of the privilege.  Rickabaugh, 361 N.W.2d at 624-25 (quoting

Catch The Bear, 352 N.W.2d at 645).  "In cases involving large numbers of

documents or where the nature of the document will not likely be readily

apparent on its face to the uninitiated observer, the proponent of work product

protection must present *in camera* matter to the Court in a reviewable form

such as in a 'Vaughn Index' which itemizes each document, provides a factual

summary of its content and justification for withholding it."  Delaney, Migdail &

Young, Chartered v. I.R.S., 826 F.2d 124, 128 (D.C.Cir.1987); Vaughn v.

Rosen, 484 F.2d 820 (D.C.Cir. 1973), *cert denied*, 415 U.S. 977, 94 S.Ct. 1564

(1974).  A court can order a party to produce a Vaughn Index where a party

asserts the protection of the attorney-client privilege as well.  See Fed. R. Civ.

P. 26(b)(5).

In the instant case, plaintiffs did not assert that the requisite elements are present to invoke the attorney-client privilege, and did not produce a privilege log for any documents or communications that it claims are privileged. Therefore, the court has no factual basis for concluding that any of the documents requested by Mr. Kay would be subject to the attorney-client or work product privileges. The plaintiffs are directed to compile a <u>Vaughn</u> index as to any documents in existence for *in camera* review that itemizes each withheld document, provides a factual rather than conclusory summary of its content and plaintiffs' justification for withholding it. <u>See</u> <u>Delaney, Migdail & Young, Chartered</u>, 826 F.2d at128; <u>Vaughn</u>, 484 F.2d 820, *cert denied*, 415 U.S. 977 (1974). The index shall be produced to the court by no later than March 14, 2010.

### 3. Whether Plaintiffs have Waived the Privilege

A protected privilege may be waived either expressly or by implication. <u>Sedco Internat'l, S.A. v. Cory</u>, 683 F.2d 1209, 1206 (8th Cir.), *cert. denied*, 459 U.S. 1017 (1982). Here, there has been no express waiver of either the attorney-client or work product privileges.

Mr. Kay cites <u>In Re Consolidated Litigation Concerning Int'l Harvester's Disposition of Wis. Steel</u>, 666 F. Supp. 1148 (N.D. Ill. 1987), for the proposition that the court should order disclosure of documents where the information contained therein was inconsistent with the claimed confidentiality of the

documents.  See Docket No. 180, at 4-5.  Mr. Kay asserts that "the attorney-client privilege is waived when discovery sought is inconsistent with a party's claims."  Docket No. 180, at 4. However, this is a misstatement of the rule regarding voluntary disclosures of information and waiver of the attorney-client privilege.

The case of In Re Consolidated Litigation involved a corporation's waiver of attorney-client privilege where the corporation failed to prevent disclosure of privileged information in various documents prior to turning over the documents to the opposing party for examination and review.  Id. at 1150-58. The documents, which the corporation later claimed were subject to the attorney-client privilege, had been actually disclosed to third parties and were not redacted or screened to prevent disclosure of confidential information.  Id. Therefore, that case stands for the proposition that where a party's *treatment* of documents is inconsistent with their claimed confidentiality, the attorney-client privilege is waived.  Id. at 1157-58.  The court does not read the case as holding that the privilege is waived where the information itself is inconsistent with the documents' claimed confidentiality, as Mr. Kay argues.

Here, there is no indication that communications between plaintiffs and their counsel have already been disclosed to Mr. Kay by plaintiffs in a manner that is inconsistent with plaintiffs' present claims that the communications are subject to privilege.  Plaintiffs have maintained that any discussions between

them and counsel are privileged and not subject to discovery. Likewise, plaintiffs themselves have not placed the settlement at issue, which circumstance has been held to waive the protection of a privilege. See St. Louis Convention and Visitors' Commission v. Nat'l Football League et al., No. 4:95CV2443 JCH, 1997 WL 1419394, at *2 (E.D. Mo. Sept. 10, 1997); Sedco, 683 F.2d at 1206 (holding that a party may waive a claim of privilege by putting at issue the underlying subject matter of the privilege). Instead, it was Mr. Kay, rather than the plaintiffs, who placed the settlement at issue by filing the motion for a determination that the settlement allocation was unreasonable (Docket No. 143), and by utilizing the settlement agreement itself and other related documents to show that the settlement was unreasonable. See Docket No. 145; St. Louis Convention, 1997 WL 1419394, at *2-3.

Mr. Kay also argues that the fact that plaintiffs paid the Kays in settlement operates as a waiver of any attorney-client privilege as to settlement discussions and allocation of settlement monies, because payment to the Kays is inconsistent with plaintiffs' assertion that the Kays were not entitled to damages. Docket No. 180, at 4-5. The court disagrees with Mr. Kay's argument that the settlement constitutes an admission by plaintiffs that they were liable for the Kays' damages. Public policy has long favored the resolution of disputes through settlement rather than through litigation, and statements made during settlement discussions are generally not admissible to prove

liability.  See Fed. R. Evid. 408 (a)(2), 408 (b) advisory committee's note.

Furthermore, the precise language of the parties' settlement agreement advises

that payment made to Mr. and Mrs. Kay was "not to be construed as an

admission by Lamar, Burton, or Zurich, that either Lamar or Burton has any

liability, or obligation of any type or kind to" the Kays.  Docket No. 145-2, at 3,

8.  The settlement release forms also state that the settlement paid by plaintiffs

was a compromise of a disputed claim and was not an admission of liability by

Lamar and Burton.  Id.

Based on the foregoing, the court finds that plaintiffs have not waived the

attorney-client privilege as to discussions they had with counsel regarding

settlement or the settlement allocation.  However, the court finds it appropriate

that the plaintiffs submit a Vaughn index in accordance with the court's

direction above.

**E.      Interrogatory No. 4  and Request for Production No. 6**

Mr. Kay's fourth interrogatory and sixth request for production seek a

detailed description of "all factors considered with regard to settlement

allocation" by plaintiffs' counsel and his representatives or clients, along with

copies of any documentation of the same.  Plaintiffs objected on grounds that

the requested information seeks discovery of counsel's mental impressions, and

is covered by the work product or attorney-client privilege.  Docket No. 196, at

6.  Plaintiffs later supplemented their response with a continued objection

based on attorney-client privilege and a reference to the bates-stamped documents produced alongside Interrogatory 1.  Id.

### 1.    The Work Product Privilege

The work product privilege is "distinct from and broader than the attorney-client privilege."  In re Green Grand Jury Proceedings, 492 F.3d 976, 980 (8th Cir. 2007) (quoting In re Murphy, 560 F.2d 326, 337 (8th Cir. 1977)). While the purpose of the attorney-client privilege "is to encourage clients to make a full disclosure of all favorable and unfavorable facts to their legal counsel," Murphy, 560 F.2d at 337, the work product privilege "functions not merely and (perhaps) not mainly to assist the client in obtaining complete legal advice but in addition to establish a protected area in which the lawyer can prepare his case free from adversarial scrutiny."  In re Special September 1978 Grand Jury (II), 640 F.2d 49, 62 (7th Cir. 1980).  Because the work product privilege protects the attorney's thought processes and legal recommendations, both the attorney and the client hold the privilege.  United States v. Under Seal (In re Grand Jury Proceedings # 5), 401 F.3d 247, 250 (4th Cir. 2005)(citation omitted); Genentech, Inc. v. U. S. Intern. Trade Com'n, 122 F.3d 1409, 1415 (Fed. Cir. 1997)(internal quotation marks and citation omitted).

The work product privilege encompasses both "ordinary" work product and "opinion" work product.  Baker v. General Motors Corp., 209 F.3d 1051, 1054 (8th Cir. 2000).  Ordinary work product includes raw factual information.

See Gundacker v. Unisys Corp., 151 F.3d 842, 848 n. 4 (8th Cir.1998).

Ordinary work product is not discoverable unless the party seeking discovery

has a substantial need for the materials and the party cannot obtain the

substantial equivalent of the materials by other means. See Fed. R. Civ. P.

26(b)(3). Opinion work product includes counsel's mental impressions,

conclusions, opinions or legal theories. See Gundacker, 151 F.3d at 848, n. 5.

"Opinion work product enjoys almost absolute immunity and can be discovered

only in very rare and extraordinary circumstances, such as when the material

demonstrates that an attorney engaged in illegal conduct or fraud." Baker, 209

F.3d at 1054 (citing In re Murphy, 560 F.2d 326, 336 (8th Cir.1977)).

In a diversity case, such as this one, courts must "apply federal law to

resolve work product claims." McElgunn v. Cuna Mut. Group, No. 06-Civ-

5061-KES, 2008 WL 5105453, at *1 (D.S.D. Dec. 2, 2008) (quoting Baker v.

Gen. Motors Corp., 209 F.3d 1051, 1053 (8th Cir. 2000)). Rule 26(b) of the

Federal Rules of Civil Procedure permits discovery of any matter "not

privileged." Rule 26(b)(3) provides that documents "prepared in anticipation of

litigation or for trial by or for another party or by its representative" are

discoverable only if the requesting party demonstrates a "substantial need for

the materials to prepare its case and cannot, without undue hardship, obtain

their substantial equivalent by other means." The rule further states that the

court will "protect against disclosure of the mental impressions, conclusions,

opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3). To assess the presence of either the attorney-client privilege or the work product privilege, the court may order documents to be submitted for *in camera* review. Fed. R. Civ. P. 26(b)(5).

With the applicable Federal Rules in mind, the court now turns to the test adopted by the Eighth Circuit for determining whether documents were prepared in anticipation of litigation, and thus are subject to the work product privilege. The test is "a factual determination" which asks

> whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

Simon v. G. D. Searle & Co., 816 F.2d 397, 401 (8th Cir. 1987). The Advisory Committee notes following Rule 26 indicate that "[m]aterials assembled in the ordinary course of business . . . or for other nonlitigation purposes" are not subject to qualified immunity under the Rule. Fed. R. Civ. P. 26(b)(3) advisory committee's note.

Mr. Kay's fourth interrogatory and sixth request for production seek "all *factors considered* with regard to settlement allocation . . . ." Docket No. 196, at 6 (emphasis added). To the extent Mr. Kay seeks to discover any raw factual information considered by plaintiffs and counsel as to the settlement

26

allocation, the request seeks ordinary work product. Although the court cannot discern whether the information is ordinary or opinion work product, the court finds that in either case, the information is not discoverable. If the information were to be classified ordinary work product, the information is not discoverable because Mr. Kay has not demonstrated that he has a substantial need for the information and cannot obtain the substantial equivalent of the same by any other means. Fed. R.Civ.P. 26(b)(3). Similarly, if the information is classified as opinion work product which has been reduced to a written format, an even greater measure of protection applies, and the information is only discoverable in "rare and extraordinary circumstances." In re Murphy, 560 F.2d at 336. Mr. Kay has not met his burden of showing why the information he seeks--specifically, "all factors considered with regard to settlement allocation," is either not protected by the work product doctrine or is otherwise discoverable.

The court also notes that to the extent Mr. Kay's Interrogatory 4 and Request for Production 6 seek information that has not been previously reduced to a written or other documented, discoverable format, parties cannot be ordered to produce documents which are not already in existence. Cone v. Rainbow Play Systems, Inc., No. CIV 06-4128, 2009 WL 4891753, at *1 (D.S.D. Dec. 16, 2009); Healthcare Management Solutions, Inc. v. Hartle, No. 8:07CV05, 2007 WL 1726585, at *3 (D. Neb. June 13, 2007). An attorney's

bare thought processes and legal recommendations are entitled to "almost absolute immunity." <u>Baker</u>, 209 F.3d at 1054 (citing <u>In re Murphy</u>, 560 F.2d at 336). Moreover, the court cannot order parties to create or produce new documents in order to respond to an opposing party's discovery request.

To that end, Lamar shall produce to the court the documents which it claims are subject to the attorney-client or work product privileges for *in camera* review. Lamar shall summarize, in factual and not conclusory terms, the nature of the material withheld and shall link each specific claim of privilege to specific material. <u>See</u> <u>Vaughn</u>, 484 F.2d at 826-28. The court can then assess whether statutory attorney-client or work product privileges apply to the documents and whether they are subject to discovery. Lamar shall produce all documents described above, whether directly to Mr. Kay's counsel, or to the court for *in camera* review, within 14 days from the date of this order. Plaintiffs are not required to compile data or documents relating to counsel's thought processes, mental impressions, and the like. To the extent that Mr. Kay's request seeks protected opinion work product, his motion to compel is denied.

**2.    Whether discovery should be limited where former counsel was provided documents at issue**

As the court noted above, plaintiffs are ordered to review their records and produce the requested information and documents which it does not claim are subject to privilege, and Mr. Kay is directed to pay the reasonable expenses

incurred as a result of providing the discovery.  See Fed. R. Civ. P. 37(a)(5)(C).

Plaintiffs shall file an appropriate Vaughn index as to any and all documents in

existence that it has withheld on grounds of attorney-client or work product

privilege.

**F.      Whether Kay's Motion Should be Denied as Untimely**

Finally, the court will address plaintiffs' assertion that the court should

deny Mr. Kay's motion to compel discovery because the district court's original

scheduling order set the deadline for discovery to December 5, 2008.  Docket

No. 198, at 2.  Plaintiffs' objection is moot.  Following a pretrial conference with

the parties on February 5, 2010, the district court amended its scheduling

order and extended the deadline for completion of discovery to February 26,

2010. See Docket No. 205.

The court finds significant to point out that on December 12, 2008, this

court issued an order directing plaintiffs (then defendants) to issue amended

answers to Mr. and Mrs. Kay's request to admit the fact of their respective

medical expenses (Docket No. 78), plaintiffs only recently stipulated to the

amount of medical bills incurred by Mrs. Kay as a result of the accident.

Docket No. 208.  Specifically, plaintiffs' stipulation was filed on February 10,

2010.  Id.  Plaintiffs waited more than an entire calendar year to admit to the

amount, which could not reasonably be disputed, despite being ordered to

issue amended answers regarding the issue fourteen months earlier.  Plaintiffs

cannot in fairness object to Mr. Kay's request for information regarding a settlement allocation that occurred in December, 2009, while disregarding their own obligation to comply with court orders for more than a year.

Furthermore, although plaintiffs fashion their compliance with Mr. Kay's recent request for discovery as "informal," plaintiffs in fact produced additional discovery beyond the district court's deadline. Mr. Kay's requests seek information only as to the settlement among the parties which was effectuated in December, 2009. Mr. Kay could not have requested discovery prior to December, 2008, regarding a settlement that had not taken place.

## CONCLUSION

The court grants in part and denies in part defendant's motion to compel in accordance with the above opinion. Plaintiffs shall serve amended responses to plaintiffs' interrogatories and requests for production within 14 days of this order. As to any documents withheld on any claim of privilege, the plaintiffs shall produce those documents to the court for *in camera* review with the appropriate index or other documentation in support of its claim of privilege.

## NOTICE TO PARTIES

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless

an extension of time for good cause is obtained.  <u>See</u> Fed. R. Civ. P. 72(a).

Failure to file timely objections will result in the waiver of the right to appeal

matters not raised in the objections.  <u>Id.</u>  Objections must be timely and

specific in order to require review by the district court.

Dated March 1, 2010.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE