UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| LAMAR ADVERTISING OF SOUTH DAKOTA, INC., a South Dakota corporation, and CODY P. BURTON,<br><br>Plaintiffs<br><br>vs.<br><br>RICHARD W. KAY,<br><br>Defendant. | CIV. 07-5091<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO QUASH SUBPOENA OF CHET ANDREWS** |

## INTRODUCTION

The original plaintiffs in this action, Richard and Deana Kay, brought the

original lawsuit in December, 2007, alleging negligence against original

defendants Lamar Advertising of South Dakota, Inc. ("Lamar") and Cody

Burton, and seeking damages for injuries arising from a motor vehicle collision.

Docket No. 1.  Jurisdiction was founded on diversity of citizenship among the

parties and an amount in controversy of at least $75,000.  See 28 U.S.C.

§ 1332.  The Kays settled their claim against Lamar and Mr. Burton in October,

2009, but throughout the proceedings and settlement, Lamar indicated its

belief that Mr. Kay was contributorily negligent, as well as its intent to seek

contribution from Mr. Kay as to the settlement paid to Mrs. Kay.

On December 15, 2009, Mr. Kay filed a motion requesting a

determination by the district court that the allocation of the settlement between

Mr. and Mrs. Kay was unreasonable.  Docket No. 143.  On February 11, 2010,

Mr. Kay served on Mr. Chet Andrews, an employee of Zurich North America,

plaintiff Lamar's insurer, a subpoena and a subpoena *duces tecum* directing

him to testify and produce documents at a deposition to be taken on February

24, 2010.  Docket No. 217.  Plaintiffs resisted the subpoena and filed an

unopposed motion to extend the district court's discovery deadline so the

parties might resolve the dispute as to the subpoena issued by Mr. Kay to

Mr. Andrews.  Docket No. 219.

Thereafter, plaintiffs filed a motion requesting that the district court

quash the subpoena and issue a protective order, pursuant to Federal Rules of

Civil Procedure 26(c), 45(c)(3)(a), 37 and Local Rule 37.1. The district court

granted the plaintiffs' motion to extend its discovery deadline, and set the new

deadline for discovery at seven days after the court's ruling on plaintiffs' motion

to quash and motion for protective order.  See Docket No. 220.  The district

court, the Honorable Karen E. Schreier, Chief Judge, then referred the motion

to quash the subpoena to this magistrate judge for resolution pursuant to

28 U.S.C. § 636(b)(1)(A).

## FACTS

The facts, insofar as they are pertinent to the present motion, are as

follows.  Mr. and Mrs. Kay were injured on July 19, 2006, when a boom truck

driven by Cody Burton, an employee acting within the scope of his employment

with Lamar, collided with a motorcycle on which the Kays were riding. The Kays filed suit against Lamar and Mr. Burton in December, 2007. Docket No. 1. Lamar and Burton filed a counterclaim against Mr. Kay in March, 2008. Docket No. 29. The Kays settled their claim against Lamar and Mr. Burton in October, 2009, and the district court thereafter realigned the parties. Accordingly, the original plaintiff, Mr. Kay, is now the defendant in the action, and the original defendants, Lamar and Mr. Burton, are now the named plaintiffs. See Docket No. 146.

On or about February 11, 2010, Mr. Kay served a subpoena *duces tecum* on Mr. Chet Andrews of Zurich North America ("Zurich").[1] See Docket No. 217. The subpoena directs Mr. Andrews to attend a deposition and to produce the following documents at that deposition: (1) Zurich's complete file on the motorcycle accident; (2) any communications between Zurich and Lamar with regard to the motorcycle accident claim, settlement negotiations, and the settlement allocation; (3) any communications between Zurich and Lamar's counsel with regard to the motorcycle accident claim, settlement negotiations, and the settlement allocation; and (4) any documents or notes of conversations between Zurich and the Kays' former counsel relating to the motorcycle accident claim, settlement negotiations, and the settlement allocation. See Docket No. 217. Lamar and Mr. Burton resist the subpoena and argue that

_____

[1] Zurich North America is the liability insurer for plaintiff Lamar.

because Zurich is a "representative" of Lamar under South Dakota statutory law, Zurich may invoke the attorney-client privilege as to the documents and information requested in the subpoena.  Docket No. 223.

Lamar and Mr. Burton also assert that any testimony by Mr. Andrews as a representative deponent of Zurich must be excluded, pursuant to the district court's previous ruling granting plaintiffs' motion *in limine* to exclude any reference to insurance coverage or lack thereof.  See Docket No. 206.  Lamar and Mr. Burton argue that there is no way to introduce any testimony of Mr. Andrews without referencing insurance coverage and thereby prejudicing Lamar's case.  Docket No. 223.

In response, Mr. Kay asserts that Lamar and Mr. Burton have not met their burden of establishing that the documents listed in the subpoena *duces tecum* are subject to the attorney-client privilege, but also that the attorney-client privilege does not apply to the documents.  Docket No. 230.  Mr. Kay also asserts that even if the documents were protected by privilege at some point, Lamar and Mr. Burton have since waived any such privilege.  Id.  Finally, Mr. Kay argues that Mr. Andrews is subject to the subpoena because the deposition testimony he is expected to give is relevant and discoverable.  At a minimum, Mr. Kay argues, the prospective testimony is "reasonably calculated to lead to the discovery of admissible evidence."  Id. (quoting EEOC v.

<u>Woodmen of the World Life Ins. Soc.</u>, 2007 WL 1217919, at *1 (D. Neb. Mar. 15, 2007)).  The court now addresses each of the parties' arguments in turn.

## DISCUSSION

**A.    Whether Mr. Andrews is Subject to the Subpoena**

At the outset, the court considers the plaintiffs' assertion that any and all testimony of Mr. Andrews must be excluded because his testimony necessarily includes reference to insurance, all references to which have been prohibited by the district court in this case.  <u>See</u> Docket No. 206.  Lamar and Mr. Burton assert there is "simply no way that Kay may introduce any portion" of Mr. Andrews' prospective testimony without violating Federal Rules of Evidence 411 and 402.[2]

Federal Rule 411 provides that evidence of insurance coverage is not admissible upon the issue of liability.  However, the rule "does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness."  Fed. R. Evid. 411.

The issue presently in dispute among the parties is whether the settlement and the allocation of payment to the Kays was or was not

---

[2] Federal Rule 402 applies somewhat less directly than Rule 411.  Rule 402 states, "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible."  Fed. R. Evid. 402.

reasonable. Resolution of that issue does not hinge in any way upon whether liability insurance was or was not in place. Mr. Andrews was apparently integral in shaping the settlement and the allocation between Mr. and Mrs. Kay, so his testimony regarding that settlement is most certainly relevant to the issue of whether the settlement was or was not reasonable. As a layperson, Mr. Andrews' opinions, mental impressions, and thought processes regarding the settlement are not subject to work product privilege, as those of plaintiffs' counsel might be. In this case, the court agrees with Mr. Kay that quashing the subpoena as a prophylactic measure simply because some of his prospective testimony might be inadmissible is not appropriate.

Instead, the court believes a balance can be struck without prohibiting Mr. Andrews' testimony altogether. For example, the parties might stipulate to any foundational requirements prior to Mr. Andrews' testimony, so reference to insurance or Mr. Andrews' employment with Lamar's insurance carrier would be unnecessary. The parties might alternatively agree that Mr. Andrews characterize his employment simply as that of a representative of Lamar, which plaintiffs agree he is for purposes of invoking privilege, and which fact Mr. Kay does not dispute. Mr. Andrews' testimony should be limited to the parties' settlement negotiations and the settlement allocation rather than proof of liability or wrongdoing on the part of Lamar or Cody Burton. Mr. Andrews' testimony can be elicited in such a way that reference to insurance is not

made, and the district court's prohibition on any mention of insurance still be

satisfied.  For these reasons, the court finds that Mr. Andrews is subject to the

subpoena and subpoena *duces tecum*, and must appear and provide the

documentation in accordance with the court's opinion below.

## B.    Procedural Requirements for Asserting Privilege

Before embarking on a discussion of the applicability of either the

attorney-client privilege or the work product doctrine, the court notes the

procedural requirements of Rule 26 of the Federal Rules of Civil Procedure.

Rule 26 outlines what must be done to assert a privilege during pretrial

discovery:

> When a party withholds information otherwise discoverable by
> claiming that the information is privileged or subject to protection
> as trial-preparation material, the party must:
>
> (i)      expressly make the claim; and
>
> (ii)     describe the nature of the documents,
> communications, or tangible things not produced or
> disclosed–and do so in a manner that, without revealing
> information itself privileged or protected, will enable other
> parties to assess the claim.

See Fed. R. Civ. P. 26(b)(5)(A).  The burden is on the party claiming the privilege

to state specifically and establish the facts supporting each of the requisite

elements of the privilege.  "A blanket claim of privilege which does not specify

what information is protected will not suffice."  United States v. White, 970

F.2d 328, 334 (7th Cir. 1992).

To the extent that a party fails to comply with the procedural requirements of asserting privilege, the court may order the documents to be produced to the opposing party or may order the documents produced to the court for *in camera* review. See Fed. R. Civ. P. 26(b)(5). With the Federal Rules and procedural guidelines in mind, the court now turns to applicability of privilege to the specific items directed to be produced pursuant to the subpoena *duces tecum* served on Mr. Chet Andrews in this case.

## C. Subpoena Item No. 1

The rider attached to the subpoena *duces tecum* served on Mr. Andrews commanded him to produce

> A complete copy of Zurich's entire file relating to the motorcycle accident including but not limited to all settlement negotiations, and documents related to the allocation of the $1.5 million settlement with Kay and his wife, Deana Kay.

See Docket No. 224-2. Plaintiffs argue that both the attorney-client privilege and the work product doctrine protect this information from discovery in this case. Docket No. 223.

### 1. The Attorney-Client Privilege

The party asserting a privilege with regard to items sought in discovery has the burden of demonstrating a factual basis for the privilege. DeNeui v. Wellman, 2008 WL 2787947, at *2, (D.S.D. July 16, 2008); Cottier v. City of Martin, 2007 WL 4568989, at *2-3 (D.S.D. Dec. 19, 2007); Rabushka ex rel. United States v. Crane Co., 122 F.3d 559, 565 (8th Cir.1997); Fed. R. Civ. P.

26(b)(5)(A). Rule 26(b)(5)(A) sets forth what is required in order for a party to assert a privilege. <u>See supra</u> Part B.

In a diversity action, state law determines both the existence and scope of the attorney-client privilege. <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938)("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."); Fed. R. Evid. 501; <u>Gray v. Bicknell</u>, 86 F.3d 1472, 1482 (8th Cir. 1996). Since this court has jurisdiction over the parties by reason of the diversity of citizenship among them, 28 U.S.C. § 1332, the state law of privilege applies to the issue of whether the statements or communications were privileged and whether the privilege has been waived. <u>Id.</u>

Under South Dakota law, no person may refuse to be a witness, to disclose any matter, or to object to the production of any writing unless specifically provided by statute or Constitutional provision. SDCL § 19-13-1. The attorney-client privilege is one of these exceptions.

A "client" is defined as "a person, public officer, or corporation, limited liability company, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from him [or her]; . . ." SDCL § 19-13-2(1). A "representative" of the client is defined as "one having authority to obtain professional legal services, or to act on advice

rendered pursuant thereto, on behalf of the client; . . ." Id. at (2).  A "lawyer" is defined as "a person authorized, or reasonably believed by the client to be authorized, to engage in the practice of law in any state or nation; . . . " Id. at (3).  A "representative of the lawyer" is defined as "one employed by the lawyer to assist the lawyer in the rendition of legal services; . . ." Id. at (4).  Finally, a "confidential communication" is defined as a communication "not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." Id. at (5).

Given these definitions, South Dakota law provides that:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:

(1) between himself or his representative and his lawyer or his lawyer's representative;

(2) between his lawyer and the lawyer's representative;

(3) by him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein;

(4) between representatives of the client or between the client and a representative of the client; or

(5) among lawyers and their representatives representing the same client.

SDCL § 19-13-3.

South Dakota cases interpreting these statutes have held that four elements must be present to invoke the attorney-client privilege: (1) a client; (2) a confidential communication; (3) the communication was made for the purpose of facilitating the rendition of professional legal services to the client; and (4) the communication was made in one of the five relationships enumerated in SDCL §19-13-3.  State v. Rickabaugh, 361 N.W.2d 623, 624-25 (S.D. 1985)(quoting State v. Catch The Bear, 352 N.W.2d 640, 645 (S.D.1984)).

Based on the foregoing, the court finds that the attorney-client privilege does not apply to the claims file.  At the time the claims file was initially assembled, there was no "client."  The Kays had not filed suit, and Lamar had not retained counsel to defend its interests.  Secondly, at the time the claims file was assembled, there were no confidential communications made with the purpose of facilitating legal services.  A claims file assembled by an insurance company is not a "confidential communication" within the definition set forth in SDCL § 19-13-2(5).  Because all four of the elements required under South Dakota law to invoke the attorney-client privilege are not present, it is unnecessary for the court's inquiry to go further.

The court also points out that the plaintiffs have not properly asserted the attorney-client privilege with respect to the claims file.  The plaintiffs have not identified the general nature of each document in the claims file which they contend is privileged; and the plaintiffs have not set forth the facts which

establish all elements of the privilege they are claiming.  See United States v. First State Bank, 691 F.2d 332, 335 (7th Cir. 1982).  The burden of demonstrating that the privilege applies to documents in the claims file lies with the plaintiffs alone.  Accordingly, the court finds that the plaintiffs have not met their burden of establishing facts supporting each element of the attorney-client privilege with respect to specific documents contained in Zurich's claims file on the Kays' motorcycle accident.

### 2.    Work Product Doctrine

Plaintiffs make a second blanket argument that Zurich's entire claims file relating to the Kays' accident is subject to privilege based on the work product doctrine.  The work product privilege was established in Hickman v. Taylor, 329 U.S. 495 (1947), and is found in Federal Rule of Civil Procedure 26(b)(3).  The work product doctrine excludes from discovery those "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative," to include the other party's attorney or insurer.  Fed. R. Civ. P. 26(b)(3)(A). As with the attorney-client privilege, the work product privilege must be specifically asserted and demonstrated, and blanket assertions of the privilege will not sustain the privilege.

The work product privilege is "distinct from and broader than the attorney-client privilege."  In re Green Grand Jury Proceedings, 492 F.3d 976, 980 (8th Cir. 2007) (quoting In re Murphy, 560 F.2d 326, 337 (8th Cir. 1977)).

While the purpose of the attorney-client privilege "is to encourage clients to make a full disclosure of all favorable and unfavorable facts to their legal counsel," Murphy, 560 F.2d at 337, the work product privilege "functions not merely and (perhaps) not mainly to assist the client in obtaining complete legal advice but in addition to establish a protected area in which the lawyer can prepare his case free from adversarial scrutiny." In re Special September 1978 Grand Jury (II), 640 F.2d 49, 62 (7th Cir. 1980). Because the work product privilege protects the attorney's thought processes and legal recommendations, both the attorney and the client hold the privilege. United States v. Under Seal (In re Grand Jury Proceedings # 5), 401 F.3d 247, 250 (4th Cir. 2005)(citation omitted); Genentech, Inc. v. U. S. Intern. Trade Com'n, 122 F.3d 1409, 1415 (Fed. Cir. 1997)(internal quotation marks and citation omitted).

In a diversity case, such as this one, courts must "apply federal law to resolve work product claims." McElgunn v. Cuna Mut. Group, No. 06-Civ-5061-KES, 2008 WL 5105453, at *1 (D.S.D. Dec. 2, 2008) (quoting Baker v. Gen. Motors Corp., 209 F.3d 1051, 1053 (8th Cir. 2000)). Rule 26(b) of the Federal Rules of Civil Procedure permits discovery of any matter "not privileged." Rule 26(b)(3) provides that documents "prepared in anticipation of litigation or for trial by or for another party or by its representative" are discoverable only if the requesting party demonstrates a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain

their substantial equivalent by other means."  The rule further states that the court will "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3).  To assess the presence of either the attorney-client privilege or the work product privilege, the court may order documents to be submitted for *in camera* review.   Fed. R. Civ. P. 26(b)(5).

The Eighth Circuit has adopted a test for determining whether documents were prepared in anticipation of litigation, and thus are subject to the work product privilege:

> Prudent parties anticipate litigation, and begin preparation prior to the . . . time suit is formally commenced. Thus the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained **because of** the prospect of litigation. But the converse of this is that even though litigation is already a prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 604 (8th Cir. 1977) (emphasis added).  The district court has addressed the issue of disclosure of insurance claims files in its order granting plaintiff's motion to compel in Roy v. D.J.L. Homes.  There, the district court explained that the Eighth Circuit's use of the words "because of" in the Diversified case withholds the protection of the work product privilege from those documents which would have been assembled regardless of whether litigation had been instituted.  Roy v. D.J.L.

14

Homes, Inc. et al., 4:07-cv-04087-KES Docket 24, at 10-11 (D.S.D. Dec. 18, 2007).  The district court continued, "[e]ven if such documents might also help in preparation for litigation, they do not qualify for protection because it could not fairly be said that they were created 'because of' actual or impending litigation."  Id.

Work product may be either ordinary work product or opinion work product.  According to the Eighth Circuit Court of Appeals,

> Ordinary work product includes raw factual information.  See Gundacker v. Unisys Corp., 151 F.3d 842, 848 n. 4 (8th Cir.1998). Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories.  See id. at n. 5.  Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means.  See Fed. R. Civ. P. 26(b)(3).  In contrast, opinion work product enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud.  See In re Murphy, 560 F.2d 326, 336 (8th Cir.1977).

Baker, 209 F.3d at 1054.

A determination of whether materials are subject to the work product doctrine is necessarily dependent on the facts of the individual case, but in all cases, "[m]aterials assembled in the ordinary course of business, . . . , or for other nonlitigation purposes are not under the qualified immunity . . . " provided for in Rule 26(b)(3).  Fed. R. Civ. P. 26(b)(3) advisory committee's note.

The question of the scope of work product protection for insurance claims files or documents created pursuant to an insurer's investigation of an

insured's claim has been frequently litigated. See, e.g., Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc., 190 F.R.D. 532, 535 (S.D. Ind. 1999); Logan v. Commercial Union Ins. Co., 96 F.3d 971 (7th Cir. 1996); Minnesota School Boards Ass'n Ins. Trust v. Employers Ins. Co. of Wausau, 183 F.R.D. 627 (N.D. Ill.1999); Stout v. Illinois Farmers Ins. Co., 852 F.Supp. 704 (S.D. Ind.1994); Harper v. Auto-Owners Ins. Co., 138 F.R.D. 655 (S.D. Ind.1991). There are no bright line rules that can be drawn with respect to the proper scope of work product protection of insurers' claims files. Logan, 96 F.3d at 974-75.

Courts in the District of South Dakota have set forth the general rule that investigative materials assembled by insurance companies are not protected by the work product privilege. See Issendorf v. Capital Indem. Corp., Civ. No. 93-1011, Docket No. 45 (D.S.D. May 3, 1994) (noting the insurance company's "routine duty to investigate accidents" and refusing to grant work product protection to such investigatory documents without a clear showing that they were in fact created in anticipation of litigation); and see Airheart v. Chicago & North Western Transp. Co., 128 F.R.D. 669, 671 (D.S.D. 1989) (refusing to apply work product protection to documents prepared by an insurance company because the documents were not assembled in anticipation of litigation, and noting that the nature of the insurance company's ordinary

course of business "is to conduct the type of investigation performed in order to fulfill a contractual responsibility to its insured").

Other federal district courts have also been reluctant to afford work product protection to claims files when the insurance company investigates the claim, rather than retained counsel, since the routine and ordinary course of business of an insurance company includes claims investigation.  See U.S. Fidelity & Guar. Co. v. Liberty Surplus Ins. Corp., 2007 WL 3023488, at *3 (M.D. Fla. Oct. 12, 2007) (stating that "[m]ost courts have held that documents constituting any part of a factual inquiry into or evaluation of a claim, undertaken in order to arrive at a claim decision, are produced in the ordinary course of an insurer's business and, therefore, are not work product"); Hadi v. State Farm Ins. Co., 2007 WL 2994632, at *2 (S.D. Ohio Oct. 11, 2007) (same); Falkner v. General Motors Corp., 200 F.R.D. 620, 623 (S.D. Iowa 2001) (requiring the party claiming privilege to make a "factual showing that the primary purpose of the insurance investigation was in anticipation of litigation" in order to sustain the privilege).

The district court in this division has provided helpful guidance as to the proper consideration of the purposes behind claims investigation by insurance companies, in conjunction with the work product doctrine:

> Although some insurance claims require litigation, it does not necessarily follow that all claim-related documents prepared by an insurance company and its agents are prepared in anticipation of litigation. In fact, one of the primary benefits of insurance is that

17

losses can be covered so that litigation can be avoided. Further, much of the preliminary time and energy expended on adjusting a claim is geared toward settlement, not toward litigation. Claim files generally do not constitute work product in the early stages of investigation when the insurance company is primarily concerned with deciding whether to resist the claim, to reimburse the insured and seek subrogation, or to reimburse the insured and not pursue the claim thereafter.

Roy v. D.J.L. Homes, Inc. et al., 4:07-cv-04087-KES, Docket No. 24, at 13-14 (D.S.D. Dec. 18, 2007).

In this case, Mr. and Mrs. Kay were hit by the Lamar boom truck on July 19, 2006. The lawsuit was not initiated until December 17, 2007. The plaintiffs have made no showing that information contained in Zurich's file up to the time the lawsuit was commenced was prepared in anticipation of litigation rather than in the ordinary course of Zurich's business. Although litigation was one potential outcome following the motorcycle accident between Mr. Burton and the Kays, investigation of accident claims is part of Zurich's regular business. Even if the Kays had retained counsel immediately following the accident, in 2006, this does not necessarily mean that any documents produced by Zurich thereafter were created in anticipation of litigation. As the district court pointed out in Roy, individuals who are involved in an accident commonly retain legal counsel to assist them in dealings with insurance companies. Id.

Nonetheless, plaintiffs imply that Zurich's file on the Kays' motorcycle accident is automatically protected by the work product privilege simply

because the anticipation of litigation might have arisen at any time following the accident.  This rationale sweeps too broadly.  "The inchoate possibility, or even the likely chance of litigation, does not give rise to the privilege."  Mission Nat'l Ins. Co. v. Lilly, 112 F.R.D. 160, 163 (D. Minn. 1986); Zenith Radio Corp. v. Radio Corp. of America, 121 F.Supp. 792, 795 (D. Del. 1954)("The work product rule does not come into play merely because there is a remote prospect of future litigation").  Instead, the work product doctrine protects only those documents prepared in actual anticipation of litigation.

An insurer assembles a claims file any time there is an accident involving one of its insureds, and the fact that an accident merely occurs or that an attorney later becomes involved in the insurer's ordinary course of business does not protect documents or activities from discovery.  To the extent the information in Zurich's file was created during factual investigation of the claim, the documents are not privileged.  Where the purposes of factual investigation and clear trial preparation overlap, this court believes that the discoverability of the materials turns on whether the party seeking the material has established a substantial need to overcome the privilege.  See Mission Nat'l Ins. Co., 112 F.R.D. at 165; Fed. R. Civ. P. 26(b)(3).

In this case, for purposes of defending the plaintiffs' contribution claim, Mr. Kay needs to know what the insurer Zurich knew at the time it discussed the settlement allocation with plaintiffs.  See Mission Nat'l Ins. Co., 112 F.R.D.

19

at 160; <u>APL Corp. v. Aetna Cas. & Sur. Co.</u>, 91 F.R.D. 10, 14 (D. Md. 1980).

"Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had." <u>Hickman</u>, 329 U.S. at 511. Where the insurer's state of mind is at issue, as it is here, and the insurer and the insured have all the relevant information at their control, the insurer should not be permitted to invoke the protection of attorney-client or work product privilege to avoid disclosing information that is essential to proving its claim, and equally essential to defending against it. "For this compelling reason, then, the claim of work product is overcome." <u>St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.</u>, 197 F.R.D. 620, 639 (N.D. Iowa 2000) (quoting <u>APL Corp.</u>, 91 F.R.D. at 14).

In this case, Mr. Kay's defense to the plaintiffs' contribution claim is that the settlement allocation is unreasonable. Likewise, a material element of the plaintiffs' claim against him is that the settlement was reasonable. Without having access to documents which may tend to prove or disprove the actual reasonableness of the settlement, Mr. Kay cannot defend the claim. To that end, the court believes Mr. Kay has a substantial need for the documents, and that the claims file is discoverable. Accordingly, plaintiffs shall produce Zurich's claims file on the motorcycle accident to Mr. Kay by no later than seven days after the date of this order.

**D.      Subpoena Item No. 2**

Second, the subpoena served on Mr. Andrews commanded him to

produce

> Any and all documents or notes of conversations between Zurich
> and its insured, Lamar, relating to the motorcycle accident claim,
> settlement negotiations, and allocation and settlement
> negotiations, and allocation and settlement of $1.5 million with
> Kay and his wife, Deana Kay.

See Docket No. 224-2.  Plaintiffs argue that the attorney-client and work

product privileges apply to this request, making the documents or notes

exempt from discovery.  Mr. Kay asserts in opposition that the attorney-client

and work product privileges do not apply.

**1. Attorney-Client Privilege**

As stated previously, in diversity cases, federal courts apply state law on

questions of attorney-client privilege.  Baker v. Gen. Motors Corp., 209 F.3d

1051, 1058 (8th Cir. 2000).  The South Dakota Supreme Court has not

addressed the extent to which communications between an insured and an

insurer are protected by the attorney-client privilege.  Where a state court has

not decided an issue, the federal district court must place itself in the position

of the state court and attempt to predict how that court would resolve the

matter.  See Pinnacle Pizza Co., Inc. v. Little Caesar Enterprises, Inc., 627

F. Supp. 2d 1069, 1072 (D.S.D. 2007) (citing Gray v. Bicknell, 86 F.3d 1472,

1482-83 (8th Cir. 1996)).

The South Dakota Supreme Court has held that communications between a defendant and a "representative of the lawyer" under SDCL § 19-13-2(4) are subject to the attorney-client privilege.  See State v. Rickabaugh, 361 N.W.2d 623, 625 (S.D. 1985).  A lawyer's representative is one "employed by the lawyer to assist the lawyer in the rendition of professional legal services. SDCL § 19-13-2(4).  For example, in Rickabaugh, the attorney's representative was an independent polygraph examiner who had been hired by defense counsel, and statements made to him by the client were deemed privileged.  Id. However, Zurich is never asserted to be a "representative of the lawyer" in this case.  There has been no assertion that Lamar's counsel hired Zurich to act as its representative in this matter.  Indeed, in the usual course, it is the insurance company who hires the lawyer to act on the insured's behalf, not vice versa.

This court is unaware of any case law demonstrating that the South Dakota state courts have held an insurer to be a representative of the insured-client for purposes of invoking the attorney-client privilege.  Unfortunately, SDCL § 19-13-2(2) does not specifically define who qualifies as a client's representative.  State courts to have considered whether an insurance company is a representative of its insured are split on the issue.

The Supreme Court of Alaska has concluded that an insurer is not a representative of the client under Alaska Rule of Evidence 503(a), which defines

a client's representative as "one having authority to obtain professional legal services and to act on advice rendered thereto, on behalf of the client." <u>See</u> <u>Langdon v. Champion</u>, 752 P.2d 999, 1002 (Alaska 1988).  Alaska's statutory provisions regarding application of the attorney-client privilege are largely identical to the corresponding statutory provisions in South Dakota.  In <u>Langdon</u>, the court adopted the "growing minority and federal rule" and held that any statements made by the insured-client to the insurance adjuster were not protected by the attorney-client privilege unless it was shown that counsel expressly directed the client to make the communication to the insurance adjuster.  <u>Id.</u> at 1003-04.  This minority rule further reasons that "communications between insured and insurer are not in the same class as communications between client and attorney, because the insurer may use its information for purposes inimical to the interests of the insured."  <u>Id.</u> at 1003 (quoting <u>Butler v. Doyle</u>, 544 P.2d 204, 207 (Ariz. 1975); <u>DiCenzo v. Izawa</u>, 723 P.2d 171, 177 (Haw. 1986); <u>Jacobi v. Podevels</u>, 127 N.W.2d 73, 76 (Wis. 1964)).

In contrast, the majority rule holds that, where the communication between the insured and his insurance company is made for the dominant purpose of protecting the interests of the insured, the insured properly assumes both (1) that the communication is made to the insurance company for the purpose of transmitting it to the attorney, and (2) that the insurance company is under an obligation to defend the insured, so the communication

will be protected by the attorney-client privilege.  See, e.g., Pietro v. Marriott Senior Living Services, Inc., 810 N.E.2d 217, 226 (Ill. App. Ct. 2004); Ex parte Nationwide Mut. Fire Ins. Co., 898 So. 2d 720, (Ala. 2004).

The burden of demonstrating that there are communications between Zurich and Lamar that should be protected by the attorney-client privilege is squarely on Lamar's shoulders.  Rickabaugh, 361 N.W.2d at 624; Fed. R. Civ. P. 26(b)(5).  The court is cognizant that the discovery requested in Mr. Kay's subpoena *duces tecum* calls for documents discussing the accident, settlement negotiations, and the settlement allocation.  The privilege, if it exists, protects only confidential communications made by Lamar for the purposes of obtaining legal advice or assisting in its defense.  Lamar, in its blanket assertion of privilege regarding all communications it has had with Zurich, has not demonstrated that all communications with Zurich were confidential communications for the dominant purpose of providing its own defense.  Therefore, Lamar has not met its burden of demonstrating that the attorney-client privilege applies to specific documents or notes of conversations between Lamar and Zurich.

## 2. **Work Product Doctrine**

As previously stated, the work product doctrine exempts from discovery those documents prepared in anticipation of litigation or for trial by or for another party or his representative.  Fed. R. Civ. P. 26(b)(3)(A).  Clearly,

documents or notes of conversations between Lamar and Zurich are not opinion work product, which typically includes "counsel's mental impressions, conclusions, opinions, or legal theories." Gundacker, 151 F.3d at 848 n. 5. The communications might constitute ordinary work product, however, which generally includes raw compilations of facts or other data. However, as already discussed, materials assembled in the ordinary course of Zurich's business are not subject to the work product privilege.

Without knowing what is contained in the documents or notes of conversations between Zurich and Lamar, the court has no way to discern whether the information is subject to work product protection. "In cases involving large numbers of documents or where the nature of the document will not likely be readily apparent on its face to the uninitiated observer, the proponent of work product protection must present *in camera* matter to the Court in a reviewable form such as in a 'Vaughn Index' which itemizes each document, provides a factual summary of its content and justification for withholding it." Delaney, Migdail & Young, Chartered v. I.R.S., 826 F.2d 124, 128 (D.C.Cir.1987); Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), *cert denied*, 415 U.S. 977 (1974). In the instant case, this was not done and, therefore, the court has no factual basis for concluding that the documents listed in the subpoena would be subject to the work product privilege.

To that end, with regard to documents and notes of conversations between Zurich and Lamar, Lamar shall produce to opposing counsel all documents responsive to Subpoena Item 2 which have not already been produced to Mr. Kay and have not been submitted to the court along with an appropriate privilege log. The court will not engage in speculation as to whether the privilege applies, when Rule 26 places on Lamar the burden of demonstrating that invocation of the privilege is proper.

**E.     Subpoena Item No. 3**

Third, the subpoena issued to Mr. Andrews commanded him to produce

> Any and all documents or notes of conversations between Zurich and Plaintiffs' counsel relating to the motorcycle accident claim, settlement negotiations, and allocation and settlement of $1.5 million with Kay and his wife, Deana Kay.

See Docket No. 224-2. Plaintiffs argue that communications between Zurich and plaintiffs' counsel are exempt from discovery based on the attorney-client or work product privileges. Mr. Kay rejects this argument and asserts that the privileges do not apply to documents or notes of conversations between Zurich and plaintiffs' counsel.

**1.     Attorney-Client Privilege**

Here, the court must determine whether communications between Lamar's counsel and Zurich are subject to privilege. If Zurich is a representative of Lamar, communications between Zurich and counsel may be privileged under SDCL § 19-13-3(1). This means that application of the

privilege turns on whether Zurich can be deemed a representative of Lamar, the client.

In In re General Agents Ins. Co. of America, Inc., the Texas Court of Appeals for the Fourteenth District held that a liability insurer could not invoke the attorney-client privilege as to communications it had with defense counsel it hired to represent its insured. In re General Agents, 224 S.W.3d 806, 815-16 (Tex. App. Houston [14 Dist.] 2007). In that case, the insurance company retained counsel for its insured, assigned a claims adjuster to the insured's file, and established a claims file in connection with the litigation. Id. at 810. The court held that the insurer had not established the attorney-client relationship with counsel, could not assert the attorney-client privilege with regard to communications with counsel, and likewise could not assert the work product privilege with respect to documents created by counsel. Id.

Despite the foregoing, the majority of other state courts to have considered the issue of who constitutes a representative of the client have determined that an insurer or adjuster does constitute a representative of the client within the meaning of the attorney-client privilege. See, e.g., Nationwide Mut. Fire Ins. Co. v. Bourlon, 617 S.E.2d 40, 53 (N.C. Ct. App. 2005); In re Arden, No. 08-03-00269-CV, 2004 WL 576064, at *3, (Tex. App. El Paso Mar. 24, 2004); Lectrolarm Custom Systems, Inc. v. Pelco Sales, Inc., 212 F.R.D. 567, 570 (E.D. Cal. 2002); Thomas v. Harrison, 634 P.2d 328, 334 (Wyo. 1981);

Asbury v. Beerbower, 589 S.W.2d 216, 217 (Ky. 1979); State ex rel Cain v. Barker, 540 S.W.2d 50, 53-54 (Mo. 1976); Brakhage v. Graff, 206 N.W.2d 45, 47-48 (Neb. 1973); Grand Union Co. v. Patrick, 247 So.2d 474, 475 (Fla. App.1971); See generally Insured-insurer Communications as Privileged, 55 A.L.R.4th 336, §§ 11-12 (1987).

Generally, where the insurance adjuster's role "was as a representative acting with the purpose of obtaining and facilitating [the insured's] legal representation," the attorney-client privilege is properly invoked as to communications between the insurance company and the attorney for the insured. In re Arden, 2004 WL 576064, at *3. Similarly, where an insurer has agreed that it has a duty to defend and to indemnify its insured, both the insured and insurer may be considered clients of the insured's lawyer, and the attorney-client privilege protects communications between the insurer and counsel. Lectrolarm, 212 F.R.D. at 571-72.

This court believes that the South Dakota state courts would likely find that Zurich is a representative of Lamar under SDCL § 19-13-2(2), because Zurich was authorized to obtain professional legal services on behalf of its insured, Lamar, and Zurich did in fact retain counsel and pay for legal representation of Lamar. Mr. Andrews apparently participated to a significant degree in shaping the settlement agreement and allocation, so it is fairly said that he acted with the purpose of obtaining and facilitating Lamar's defense.

Where the insurer acts in this capacity, with a purpose of facilitating the insured's legal defense, communications between insurer and insured have been held to be protected by the attorney-client privilege.  In re Arden, 2004 WL 576064, at *3.  Because the court believes that South Dakota state courts would rule in the same manner, the court accordingly finds that SDCL § 19-13-3(1) provides protection to communications made between Zurich and Lamar's counsel, as long as the communications were made in furtherance of counsel's legal representation of Lamar.  Accordingly, the court will not order disclosure of the documents and notes of conversations between Zurich and Lamar's counsel.

**2.     Work Product Doctrine**

The court believes the work product doctrine is similarly applicable to communications between Zurich and Lamar's counsel.  The work product privilege applies to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3)(A).  Rule 26 specifically includes the party's attorney and insurer as being within the category of persons whose documents are protected from discovery under the work product doctrine.  The court has already found that Zurich, the insurer, is a representative of Lamar under South Dakota law.  Furthermore, at any time that documents or notes were made and communicated between Zurich and Lamar's counsel regarding

the settlement or settlement allocation, the requirement of actual anticipation of litigation would have been in effect. Thus, any documents or notes of conversations between Zurich and Lamar's counsel regarding the accident claim, settlement, or allocation, are properly protected by the work product privilege and need not be disclosed to Mr. Kay.

**F.      Subpoena Item No. 4**

Finally, the subpoena issued to Mr. Andrews directed him to produce

Any and all documents or notes of conversations between Zurich
and the Kay's [sic] counsel, Eric Neiman, relating to the motorcycle
accident claims, settlement negotiations, and allocation and
settlement of $1.5 million with Kay and his wife, Deana Kay.

See Docket No. 224-2. Plaintiffs argue that these documents or notes are protected by the attorney-client privilege or work product doctrine. Mr. Kay argues that the documents are not subject to either privilege.

**1.      Attorney-Client Privilege**

The court finds that the attorney-client privilege does not extend to communications or documents between Zurich and Mr. Kay's former counsel, Attorney Neiman. The most basic element required to invoke the privilege, namely, the attorney-client relationship, is totally absent. Moreover, it cannot logically be said that communications made by one party's insurer to opposing counsel are intended to be kept confidential or were made for purposes of facilitating the insured's legal representation. Finally, none of the relationships noted in SDCL §19-13-3, at least one of which must be present to invoke the

30

privilege, are present with respect to Zurich and Attorney Neiman.  The

attorney-client privilege is plainly inapplicable to communications between

Zurich and Mr. Kay's former counsel.

### 2.    The Work Product Privilege

One of the most basic tenets of the work product doctrine is that it

protects the impressions and opinions of legal counsel so that "the lawyer can

prepare his case free from adversarial scrutiny."  In re Special September 1978

Grand Jury (II), 640 F.2d 49, 62 (7th Cir. 1980).  The work product privilege

protects *the attorney's* thought processes and legal recommendations.  See

Under Seal (In re Grand Jury Proceedings # 5), 401 F.3d at 250 (emphasis

added).  With respect to communications between Zurich and Mr. Kay's former

counsel, Zurich has no standing to invoke the work product privilege to protect

its opinions, thought processes, or mental impressions from disclosure,

because Zurich is not a representative of Lamar's counsel under SDCL §19-13-

2(4)(a "representative of the lawyer" is "one employed by the lawyer to assist the

lawyer in the rendition of legal services").

Although Zurich is a representative of Lamar, Lamar cannot invoke the

attorney's work product privilege with respect to disclosures made to opposing

counsel or adverse third parties.  See Pittman v. Frazer, 129 F.3d 983, 988 (8th

Cir. 1997); United States v. Johnson, 378 F. Supp. 2d 1041, 1047 (N.D. Iowa

2005)(quoting Genentech, Inc. v. United States Int'l Trade Comm'n, 122 F.3d

1409, 1415 (Fed.Cir. 1997)("Generally disclosure of confidential communications or attorney work product to a third party, such as an adversary in litigation, constitutes a waiver of privilege as to those items.")).

Therefore, the court finds that any documents or notes of conversations between Zurich and Attorney Neiman are not protected work product, and shall be disclosed to Mr. Kay's counsel.

**G.    Waiver**

As a final matter, the court considers Mr. Kay's argument that any applicable privileges have been waived with respect to the subpoenaed materials.  While altogether disputing the application of privilege to any of the subpoenaed materials, Mr. Kay argues that the plaintiffs have waived any such privilege by "injecting the issue of reasonableness of settlement and allocation of settlement . . . ."  Docket No. 230, at 4.

The South Dakota state courts have addressed voluntary disclosure of information and the resulting waiver of privilege.  See generally State v. Rickabaugh, 361 N.W.2d 623, 625 (S.D. 1985); State v. Catch the Bear, 352 N.W.2d 640, 647 (S.D. 1984).  The privilege may be deemed to be waived where a client voluntarily discloses or consents to disclose any significant part of the privileged matter.  Catch the Bear, 352 N.W.2d at 647.  The burden of establishing that a particular communication is protected by the attorney-client privilege rests with the party asserting the privilege.

Rickabaugh, 361 N.W.2d at 624.  Voluntary disclosures to persons outside the attorney-client relationship waive the privilege.  Rickabaugh, 361 N.W.2d at 625.

With the exception of communications made by Zurich to Attorney Neiman, as discussed above, there is no indication that any of the other subpoenaed materials between plaintiffs and their counsel have already been disclosed to Mr. Kay or another third party in a manner that is inconsistent with plaintiffs' claims that the communications are privileged.  The court finds that plaintiffs have not waived either the attorney-client privilege or work product privilege as to discussions they had with counsel, notes made, or documents created regarding settlement or the settlement allocation.

## CONCLUSION

Based on the foregoing, the court hereby

ORDERS that plaintiffs' motion to quash the subpoena served on Chet Andrews is denied.  Mr. Andrews is directed to appear for deposition testimony pursuant to the district court's scheduling order, and shall bring with him any and all documents in accordance with this opinion.  The court further

ORDERS that any and all documents or notes of conversations between Zurich and Lamar shall be produced to Mr. Kay within seven days of the date of this order.  The court further

ORDERS that any and all documents or notes of conversations between Zurich and Mr. Kay's former counsel, Eric Neiman, shall be produced to Mr. Kay within seven days of the date of this order.  The court further

ORDERS that documents and notes of conversations between Zurich and Lamar's counsel shall not be produced, in accordance with this opinion.  The court further

ORDERS that a complete copy of Zurich's claims file relating to the Kays' motorcycle accident, excluding only those documents or notes of communications between Zurich and Lamar or Zurich and Lamar's counsel which have been expressly excepted by this opinion, be produced to Mr. Kay within seven days of the date of this order.

## NOTICE TO PARTIES

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  See Fed. R. Civ. P. 72(a). Failure to file timely objections will result in the waiver of the right to appeal

matters not raised in the objections.  Id.  Objections must be timely and specific in order to require review by the district court.

Dated April 12, 2010.

BY THE COURT:

/s/ *Veronica L. Duffy*
_____
VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE